UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

IVAN TORRES,                                        :

                              Petitioner,           :

          -against-                                 : **REPORT AND RECOMMENDATION**

ROBERT ERCOLE, Superintendent Green Haven  :        06 Civ. 674 (RMB)(KNF)
Correctional Facility,
                                                    :
                              Respondent.
------------------------------------------------------------- X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Ivan Torres ("Torres") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C.

§ 2254, alleging he is in the custody of New York State in violation of his rights under the Sixth

and Fourteenth Amendments to the United States Constitution because: (1) "he was denied

effective assistance of counsel" at a <u>Huntley</u> hearing;[1] and (2) "his conviction was obtained

through the use of evidence whose admission was predicated on false testimony."  Torres

contends the state court's resolution of his constitutional claims is the product of an unreasonable

application of clearly established federal law.  The respondent opposes the petition contending

the state-court's rejection of Torres' claims was neither contrary to nor based on an unreasonable

---

[1] A pretrial hearing, held pursuant to <u>People v. Huntley</u>, 15 N.Y.2d 72, 255 N.Y.S.2d 838
(1965), is used to determine the voluntariness of inculpatory statements made by a criminal
defendant to law enforcement officers.

1

application of clearly established federal law.

On April 8, 2008, in order to provide Torres' trial counsel an opportunity to present competent evidence, in connection with the petitioner's claim of ineffective assistance of counsel, the Court issued an order, pursuant to Sparman v. Edwards, 154 F.3d 51 (2d Cir. 1998), directing Torres to serve a copy of the petition and that order on his trial counsel. On April 29, 2008, Torres' trial counsel filed an affidavit in response to the Court's April 8, 2008 order. In that affidavit, counsel stated that he: (i) was not prepared for the Huntley hearing; (ii) did not thoroughly review pertinent documents, in connection with the Huntley hearing; and (iii) had no strategic reason for not attempting to impeach the prosecution's key witness, at the Huntley hearing.

## BACKGROUND

During the early morning hours of November 30, 2000, Miroslaw Czeczot ("Czeczot")[2] consumed 10 to 15 beers in a bar located in his East Village, Manhattan, neighborhood. While shooting pool at the bar, Czeczot learned of Brownies, an after-hours joint, located in the vicinity of East 13th and 14th Streets, between Avenues A and B. Some time between 6:00 a.m. and 6:30 a.m., after the bar had closed, Czeczot decided to find Brownies and "have some fun." Czeczot was unaware of Brownies' exact location, and as he walked along the street, he made inquiries of passersby for directions. One of those persons was Torres, who told Czeczot he knew of

---

[2] The Court notes that, when it called its first witness to testify at the trial in April 2001, the prosecution spelled that witness' first name as "Microslaw" and the transcript indicates the witness stated his first name was "Microslaw." However, when the prosecution called the same witness to testify at the retrial, in July 2001, it spelled the witness' first name as "Miroslaw" and the transcript indicates the witness stated his first name is "Miroslaw." It is undisputed that "Microslaw" Czeczot, who testified in April 2001, is the same person as "Miroslaw" Czeczot, who testified in July 2001.

Brownies and agreed to take Czeczot there via taxi.

The two men traveled a short distance via taxi and then exited the vehicle, after Czeczot paid the fare. When they alighted, Torres informed Czeczot that Brownies was the scene of fist fights and a dangerous place. Torres suggested that Czeczot alter his plans; he proposed that Czeczot purchase beer for them to consume somewhere on the street. Czeczot agreed and purchased beer from a grocery store to which Torres had led him.

Thereafter, as the two men strolled along the street, they encountered Arnulfo Cazares ("Cazares"), who joined them. The three men entered an alley, where they drank beer. At some point, Torres informed Czeczot that Cazares had a gun. Torres and Cazares directed Czeczot to be still and advised him that nothing would happen to him. Torres and Cazares searched Czeczot's pockets, whereupon another person approached. That person was an off-duty police sergeant, Joseph Stremel ("Stremel").[3] Stremel observed Czeczot had his hands raised, identified himself as a police officer and made inquiries of the trio to determine what was happening. After checking his pocket, Czeczot informed Stremel that his wallet was missing. Stremel checked Torres and Cazares; he recovered Czeczot's wallet from Cazares. Stremel summoned assistance, by contacting a 911 emergency telephone operator, who dispatched uniformed officers to the scene.

On December 19, 2000, a New York County grand jury returned an indictment charging Torres with two counts of second-degree robbery, pursuant to New York Penal Law ("NYPL")

---

[3] The Court notes that, when the prosecutor called the Sergeant to the witness stand during the first trial, he spelled the Sergeant's surname: "Stremell," and that is the spelling used throughout the transcript from the first trial. However, when the Sergeant took the stand during both, the first trial and the retrial, he spelled his surname: "Stremel." The Court will refer to this witness using the spelling of the surname the witness indicated, "Stremel."

§§ 160.10(1)[4] and 160.10(2)(b),[5] and three counts of fourth-degree grand larceny, pursuant to NYPL § 155.30(4).[6] Vincent Matthews ("Matthews"), Esq., of the Neighborhood Defender Services, represented Torres in connection with the criminal action.

*Petitioner's First Trial*

After arraignment, the case was assigned, for trial, to the Honorable Harold Beeler, New York State Supreme Court, New York County, Criminal Term. Pretrial motions were made, which Judge Beeler decided on March 13, 2001, and the case proceeded to trial before a jury, in April 2001. At the trial, Czeczot was unable to recall many details pertaining to the incident on November 30, 2000; he attributed his faulty memory to his intoxication on the date of the incident.

On April 27, 2001, before trial activities resumed, the prosecutor informed the court that he wanted to place a discovery issue on the record. The following ensued:

> PROSECUTOR: I was made aware of another statement made by Mr. Torres to Sergeant Stremell. This was made, obviously it's debatable whether or not they [were] under arrest at the time, but the defendant and the co-defendant were against the fence as described at this point, and their hands out and in response to Sergeant Stremell's question: Why did you have your hands in the victim's pockets? The defendant, Mr. Torres, stated something in substance: He was trying to sell us drugs. I was checking to see if he was an undercover cop. Now the People don't have any intention of using this statement but it is under the discovery rules required to be turned over. The People recognize it is a

---

[4] "A person is guilty of robbery in the second degree when he forcibly steals property and when: (1) He is aided by another person actually present." NYPL § 160.10(1) (2000).

[5] "A person is guilty of robbery in the second degree when he forcibly steals property and when: (2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." NYPL § 160.10(2)(b) (2000).

[6] "A person is guilty of grand larceny in the fourth degree when he steals property and when: (4) The property consists of a credit card or debit card." NYPL § 155.30(4) (2000).

violation because the cop obviously knew about the statement before. I was not aware that it was the defendant who made this statement until, as I said, I spoke to the officer last night, so I'm making the Court aware of it and counsel aware of it now.

THE COURT: Let's go over the statement again.

PROSECUTOR: In substance it was once again in response to Sergeant Stremell's question: Why did you have your hands in Mr. Czeczot's, in the victim's pockets, and he stated in substance, this being the defendant: He was trying to sell us drugs. I was checking to see if he was an undercover cop.

The court determined that, as a sanction for late disclosure, it would not permit the statement to be used by the prosecution.

Torres testified in his own behalf at the trial. He recalled that, in the early morning hours of November 30, 2000, after he exited a store, from which he purchased cigarettes, he was approached by Czeczot, who asked him if he knew of an after-hours joint and mentioned Brownies. Torres indicated he knew of the place. Czeczot asked Torres to take him there, and they entered a taxi. Torres testified that, after they exited the taxi, Czeczot asked Torres if he could procure something for him, suggesting with a gesture of his nose, that he wanted cocaine. Torres denied that he accompanied Czeczot to purchase beer in a grocery store, as Czeczot claimed. According to Torres, he agreed to procure cocaine for Czeczot and, after inquiring of several individuals about purchasing cocaine, they met Cazares. Torres testified that Cazares, suspecting they may be police officers, asked them to go to a stoop in a nearby alley. A few minutes later, Cazares joined them and wanted to ensure that they were not police officers. Cazares patted down Torres, found his wallet, checked it and returned it to Torres. Torres testified that Cazares also wanted to pat down Czeczot, but Czeczot was reluctant to allow Cazares to do so. Torres encouraged Czeczot to show his wallet to Cazares, and, in so doing,

reached into Czeczot's pocket with one of his hands. Czezcot gave Cazares his wallet, which Cazares checked. Torres recalled that Cazares gave a bag of cocaine to Czeczot, who placed it in his pocket. According to Torres, when Cazares was about to return Czeczot's wallet to him, Stremel approached and asked what was happening. Torres testified that when Stremel asked whether everyone was fine, each answered affirmatively. According to Torres, when Stremel asked Czeczot if he were fine and whether he was sure he was not "being robbed or anything like that," Czeczot answered that everything was fine. Thereafter, Stremel checked Torres' identification, told Torres to stand at the fence and called the police on his cell telephone.

The prosecution sought to cross-examine Torres anew concerning his testimony about the bag of cocaine, and the court granted its request. After his arrest, Torres wrote a letter to the court, in which he stated that the police recovered a bag of cocaine from Czeczot. During re-cross-examination, Torres testified that he did not see the police recover the bag of cocaine. To rebut Torres' testimony, that Czeczot took the bag of cocaine from Cazares and placed it in his pocket, the prosecution asked Stremel whether he searched Czeczot and the scene and whether he found a bag of narcotics. Stremel answered that he searched Czeczot and the scene, but no bag of narcotics was recovered.

During the re-cross-examination of Stremel, Torres' trial counsel asked the following:

QUESTION: Now my understanding was that you had called for backup because you were investigating a possible robbery?
ANSWER: Correct.
QUESTION: When the other officers arrived there was no reason for you, at that time, to believe that there was any drugs involved?
ANSWER: Actually there was. There was a reason for me to believe so.
QUESTION: There was a reason for you to believe?
ANSWER: Yes, there was. Mr. Torres, the defendant - -

6

At that juncture in the proceedings, the court held a side-bar conference, outside the presence of the jury, in order to determine what limit, if any, to place on Stremel's testimony. At the conference, the prosecutor argued that, by asking Stremel whether he had any reason to believe that drugs were involved, while knowing that Torres' statement to Stremel was precluded from being introduced at the trial, Torres' counsel opened the door for that statement to be received in evidence. The prosecutor claimed that not allowing Stremel to explain to the jurors that the reason for searching Czeczot was Torres' statement to him, that Czeczot was selling drugs, would prejudice the prosecution, because the jurors would want to know what reason Stremel had to search Czeczot. Torres' counsel argued that, but for the prosecution's reopening of the cross-examination of Torres, to inquire into the issue of narcotics, "this issue would have never come up because it went directly to the heart of whether or not there was reason to search Mr. Czeczot for drugs." Torres' counsel stated that he did not open the door to introducing the statement into evidence intentionally and that, because he was apprised of Torres' statement that same morning, he "wasn't even thinking of that statement at that time and blindly asked it. If I was thinking of it I would not have asked that question because I didn't want to go down that road and wouldn't have done so."

In order to ascertain when Stremel disclosed the statement to the prosecution the court called Stremel to the witness stand, and the following ensued:

THE COURT: Sergeant Stremel, you're under oath. I'm going to ask you a question. This morning I heard from [the prosecutor] a statement that was the first time I knew about a particular statement to the effect that the defendant, Mr. Torres, at around the time all of the people were confronted by you, for want of a better word, said something like that the complainant in this case was there to -- was selling them drugs.
THE WITNESS: That's correct.
THE COURT: Do you remember that statement?

THE WITNESS: Right.
THE COURT: Something like, according to [the prosecutor] this morning, I think it's
something like why he had his hand in the complainant's pocket and the statement was:
He was trying to sell us drugs. I was checking to see if he was an undercover police
officer.
THE WITNESS: That's correct.

The court allowed Stremel to answer the question posed to him by Torres' counsel. Stremel

testified: "Okay, Mr. Torres had informed me that Mr. Czeczot was trying to sell him drugs and

that was the reason why I believed that there might have been drugs involved at that point."

Thereafter, the court provided a cautionary instruction to the jury regarding Stremel's recitation

of Torres' statement to him, explaining that Torres' statement to Stremel was being admitted into

evidence to explain Stremel's actions, "as he said he acted upon the statement," and not "for the

truth of what was in that statement." On May 1, 2001, after learning about the jury's continuing

deadlock, the parties consented to and the court declared a mistrial.

*Petitioner's Retrial*

On July 24, 2001, pretrial proceedings commenced before the Honorable William Wetzel

New York State Supreme Court, New York County, Criminal Term, in connection with Torres'

retrial. Torres was represented by the same counsel who represented him at the first trial,

Matthews. During a pretrial hearing, Torres' counsel brought to the court's attention the

preclusion ruling from the first trial concerning Torres' statement to Stremel:

In the previous trial there was a late discovery ruling. The People gave notice to us on the
day of trial that Sergeant Stremel - - of an alleged statement made by my client to
Sergeant Stremel and the Court decided to preclude the People from using that statement
in its direct case unless the defense somehow opened the door to that statement.

The prosecutor informed the court that he did not "believe notice [was] an issue here. Obviously

the defendant has had notice of it since the trial." The court stated: "Well, if it's moot, thank

8

God for moot issues. Let's not ask for rulings on hypotheticals or moot issues."

Before the parties' opening statements, the prosecutor brought to the court's attention Torres' statement to Stremel. The prosecutor stated that the court, at the first trial, precluded the statement correctly "for unfair surprise," but argued that, if the prosecution presents evidence that Stremel searched Czeczot during its direct case, "without being able to let the jury know why he took those actions, it will simply confuse the jury and lead to unfair speculation." The following ensued:

> THE COURT: The question really now would be do we need a Huntley hearing on whether it was spontaneous or not.
> MR. MATTHEWS: Your Honor, that was one of the issues that we had last time; because it was not noticed.
> THE COURT: I am willing to - - you are making an application now to excuse the late notice because of the fact that it - - that they were notified at the previous trial. I'll grant that motion.
> [THE PROSECUTOR]: Yes, your Honor.
> THE COURT: Now, do you want a Huntley hearing on it?
> MR. MATTHEWS: Well, your Honor, to be quite honest, I'm not prepared to go through a Huntley hearing on the issue.
> THE COURT: Then we won't have a Huntley hearing.
> MR. MATTHEWS: Well, your Honor, if that's the Court's decision, then we would have to have a Huntley hearing.

Before the <u>Huntley</u> hearing was conducted, Czeczot testified for the prosecution, providing a similar account of the events of November 30, 2000, as the one he provided during the first trial. Thereafter, the <u>Huntley</u> hearing was scheduled to commence. Although the court had determined it would excuse the prosecution's late notice concerning Torres' statement, it revisited that issue after Torres' counsel inquired about the legal basis for the court's determination. The court asked counsel why it should not determine that the notice requirement was satisfied given that four months had elapsed since the statement was disclosed to Torres.

Torres' counsel stated: "Your Honor, because I believe this was the law of the case the first time we tried." The court then proceeded with the <u>Huntley</u> hearing to determine "whether it was a statement elicited while in custody improperly or whether it was spontaneous."

At the <u>Huntley</u> hearing, Stremel testified that, after he called the 911 operator and while he was waiting for assistance, Torres "stated, the reason he had his hands in Mr. Czeczot's pocket, he said he believed Mr. Czeczot was trying to sell he and Mr. Cazeres drugs and they believe he was an undercover officer and they were searching him to make sure he is not a police officer." This exchange followed:

> [THE PROSECUTOR]: I'm sorry when he made that statement to you had you said anything to him to elicit that statement?
> [STREMEL]: I don't believe so other than the fact I may have said to him he was asking me why he was being held. I briefly explained he was being held for possibly larceny or robbery.
> [THE PROSECUTOR]: And did he just come out and make that statement?
> [STREMEL]: Yes, he did.

On cross-examination, Torres' counsel elicited from Stremel that, after he made the 911 call and asked Torres to place his hands on a fence, Torres was not free to leave. Stremel testified that Torres asked why he was being detained and he told Torres for possible "robbery or larceny." Stremel also testified that, at that point, he did not read Torres his rights, pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602 (1966). The following was the end of Stremel's testimony concerning the issue of Torres' statement to him:

> [COUNSEL]: You did ask Mr. Torres questions prior to him giving that statement?
> [STREMEL]: When I approached, I identified myself as a police officer and I just stated to the group, nobody in particular, "How are you doing, fellows? I'm a police officer. What's going on here?"
> THE COURT: Okay, stop there.
> [COUNSEL]: Did you ask Mr. Torres any other questions?

[STREMEL]: Not that I can recall. I may have asked him when he said that Mr. Czeczot was trying to sell him drugs, but honestly I don't recall.
[COUNSEL]: I have no further questions.

The court made the following findings of facts with respect to the <u>Huntley</u> hearing:

This off duty police officer came upon a situation, inquired of the three people present as to what was going on. At some point, the complaining witness indicated that they had his wallet. He called for assistance on his cell phone. The defendant stated to the sergeant that he had his hands in the complaining witness' pocket in order to see whether or not he was an undercover officer. The Court finds the sergeant credible and concludes that the statement given to the police officer by Mr. Torres was not the result of custodial interrogation.

Before the jury, Stremel provided an account of the events of November 30, 2000, similar to the one he provided during the first trial. He testified about Torres' statement to him:

[THE PROSECUTOR]: So what happened while you were waiting for backup to arrive?
[STREMEL]: Mr. Torres had asked me, you know, what they were being held for and, like I said, I explained to them that that's what we were there to find out. I didn't know if it was a robbery or a larceny. He explained to me that his hands were in Mr. Czeczot's pockets because - -
MR. MATTHEWS: Objection, your Honor.
THE COURT: Overruled.
[STREMEL]: - - his hands were in Mr. Czeczot's pockets because Mr. Czeczot was trying to sell them drugs and they believed Mr. Czeczot was an undercover police officer and they were searching him to make sure that he wasn't.

After the prosecution presented its direct case, Torres moved to dismiss the charges against him.

The court granted the motion with respect to one count of second-degree robbery, but denied the

motion with respect to the remaining counts in the indictment, namely, the second-degree

robbery and the three fourth-degree grand larceny counts.

Torres testified, providing an account of what occurred on November 30, 2000, similar to

the one from his first trial. Matthews asked Torres, during direct examination: "Did you ever tell

Sergeant Stremel that Mr. Czeczot was trying to sell you drugs?"  Torres answered: "No, that was Mr. Czecozt who made that remark.  Mr. Czeczot stated that he was trying to sell me drugs. They thought I was a cop.  That's how that statement came out."  During summation, the prosecutor argued, inter alia, that: (i) Torres' statement to Stremel, that Czeczot was selling them drugs, resulted when he "panicked that he had just been caught red-handed;" (ii) Torres "had a new lie for trial.  This time he came up with a fairy tale that he was facilitating a drug sale;" and (iii) Torres' testimony was a "fabrication."  The prosecutor explained to the jury that Torres' statement to Stremel was "in complete difference" with "the story we heard at trial from Mr. Torres."  On July 26, 2001, the jury returned the verdict finding Torres guilty for second-degree robbery and three counts of fourth-degree grand larceny.  On December 3, 2001, the court sentenced Torres, as a persistent felony offender, to twenty years to life imprisonment for the second-degree robbery conviction and one and one-third to four years imprisonment for each count of fourth-degree grand larceny, and directed that all the sentences should run concurrently.

*Post-Conviction Proceedings*

On February 6, 2003, Torres filed a motion, in the trial court, to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, on the ground that his constitutional right to counsel was violated because his trial counsel was not licenced to practice law in New York State when he represented him at his retrial.  Torres presented evidence that, at the time of the retrial, his trial counsel was not: (i) a member of the New York State Bar; (ii) admitted to practice pro hac vice in the trial court; and (iii) a member in good standing of the Washington State Bar, having been suspended for failing to pay dues.  On March 28, 2003, the trial court denied Torres' motion determining that, despite the technical

deficiencies in trial counsel's status, Torres received effective representation from his trial counsel. Finding the circumstances of counsel's employment disturbing, the trial court referred the matter to the relevant disciplinary committees. On June 27, 2003, the Appellate Division granted Torres leave to appeal to that court from the determination on his CPL § 440.10 motion, noting that, in the event Torres had an existing direct appeal from a judgment, it should be consolidated with the appeal from his CPL § 440.10 motion.

On March 24, 2003, Torres appealed to the New York State Supreme Court, Appellate Division, First Department, from the judgment of conviction, arguing that: (1) the trial court violated the law of the case doctrine by admitting into evidence his alleged statement to Stremel, which had been precluded properly from his first trial due to the prosecution's failure to provide notice timely; (2) his trial counsel rendered ineffective assistance to him, when he failed to impeach Stremel, at the <u>Huntley</u> hearing, and where the subsequent admission of his alleged statement into evidence was predicated on Stremel's false testimony; (3) his right to a fair trial was violated, because the prosecutor committed misconduct when, in summation, he argued that an acquittal would be tantamount to a finding that Stremel committed perjury, bolstering the prosecution's witness, denigrating Torres and accusing him of lying; and (4) the evidence was not sufficient to sustain the guilty verdict on the second-degree robbery charge. On December 30, 2003, the Appellate Division affirmed the conviction unanimously. It determined that: (a) the trial court acted properly, when it admitted into evidence Torres' statement to Stremel, because the court's denial of his suppression motion, after the <u>Huntley</u> hearing, rendered any alleged deficiency in the notice irrelevant; (b) Matthew's performance was effective, and the trial court's denial of Torres' motion to suppress was not obtained by fraud; (c) Torres' objections to the

13

prosecutor's summation were unpreserved; and (d) the verdict was based on legally sufficient evidence. See People v. Torres, 2 A.D.3d 367, 768 N.Y.S.2d 823 (App. Div. 1st Dep't 2003). Thereafter, Torres sought leave to appeal to the New York Court of Appeals. On April 1, 2004, the New York Court of Appeals denied Torres' request for leave to appeal to that court. See People v. Torres, 2 N.Y.3d 765, 778 N.Y.S.2d 784 (2004).

On May 26, 2004, Torres filed a second motion to vacate the judgment of conviction, pursuant to CPL § 440.10, claiming: (i) his trial counsel rendered ineffective assistance to him, by failing to impeach Stremel at the Huntley hearing; and (ii) the admission of his alleged statement to Stremel into evidence was predicated on false testimony by Stremel. On January 28, 2005, the trial court determined Torres' claims were procedurally barred, because they were raised and decided by the Appellate Division previously, and it denied his motion. The trial court also noted that, were it to review the claims, it would reject them as meritless.

On June 25, 2004, Torres filed a motion for a writ of error coram nobis in the Appellate Division, on the ground of ineffective assistance from appellate counsel. On December 9, 2004, the Appellate Division denied Torres' motion. See People v. Torres, 13 A.D.3d 1234, 787 N.Y.S.2d 674 (App. Div. 1st Dep't 2004). The instant petition followed.

## DISCUSSION

*Standard of Review*

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

A state-court decision is "contrary to" the Supreme Court's precedent: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). A state-court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u>, at 407, 120 S. Ct. at 1520. To prevail under the "unreasonable application" clause it is not sufficient to show that the state court decision is "more than incorrect or erroneous," it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S. Ct. 1166, 1174 (2003). A federal habeas corpus petitioner bears the burden of proving, by a preponderance of the evidence, that a violation of his constitutional rights occurred. <u>See Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997).

If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing

evidence.  See 28 U.S.C. § 2254(e)(1).  "When a state court's adjudication of a claim is

dependent on an antecedent unreasonable application of federal law, the requirement set forth in

§ 2254(d)(1) is satisfied.  A federal court must then resolve the claim without the deference

[28 U.S.C. § 2254(e)(1)] otherwise requires."  Panetti v. Quarterman, __ U.S. __, 127 S. Ct.

2842, 2858 (2007).

*Whether Claims Have Been Adjudicated on the Merits by the State Court*

 A state court adjudicates a constitutional claim on the merits when it: (a) disposes of the

claim on substantive grounds; and (b) reduces its disposition to judgment.  See Norde v. Keane,

294 F.3d 401, 410 (2d Cir. 2002) (citing Sellan v. Kuhlman, 261 F.3d 303-312 [2d Cir. 2001]).

No articulation of the state court's reasoning for disposing of the claim is required, as long as a

substantive ground is a basis for the disposition.  See id.

Here, Torres presented his Sixth and Fourteenth Amendment constitutional claims to the

Appellate Division.  After reviewing the record, the Appellate Division rejected, on substantive

grounds, Torres' claim that Matthews rendered ineffective assistance to him by failing to

impeach Stremel, at the Huntley hearing, respecting Torres' statement to Stremel, making

citation to Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Although the

Appellate Division did not make any citation to a relevant federal law governing due process

violation claims based on the use of false evidence to obtain a conviction, when it rejected

Torres' due process claim, its rejection was on substantive grounds, because it was predicated on

the reasoning used to reject Torres' ineffective assistance of counsel claim.  Therefore, the Court

finds that Torres' claims have been adjudicated on the merits by the state court.

*Whether Presumption of Correctness Applies to the State Court's Factual Determinations*

Torres contends that, because the ultimate determination of whether a person is "in custody" is a mixed question of law and fact, no presumption of correctness applies to the state court's factual findings concerning the "in custody" issue.  According to Torres, the Appellate Division's "decision represents a conflated determination of the issues of interrogation and custody, with its legal determination as to the question of custody being objectively unreasonable."  Torres maintains, "[g]iven the erroneous legal finding, the 'factual' component [that no interrogation occurred] of such an intermingled decision is owed no deference."  The respondent contends the Appellate Division's finding, that "the statement was spontaneous and not the product of custodial interrogation is presumed correct," and Torres failed to rebut that presumption with clear and convincing evidence.

The presumption of correctness, codified in 28 U.S.C. § 2254(e)(1), does not apply to a state court's ultimate conclusions on whether, under the totality of the circumstances, a criminal defendant: (a) was "in custody" for <u>Miranda</u> purposes; (b) volunteered a confession; or (c) received effective assistance of counsel.  <u>See</u> <u>Thompson v. Keohane</u>, 516 U.S. 99, 111-13, 116 S. Ct. 457, 465 (1995); <u>Miller v. Fenton</u>, 474 U.S. 104, 112, 106 S. Ct. 445, 450 (1985).  However, the state court's factual findings of the circumstances surrounding "in custody," voluntariness of a confession and effective assistance of counsel inquires are entitled to the presumption of correctness because they represent the court's findings of "factual issue[s]," that is, "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'"  <u>Thompson</u>, at 109-10, 116 S. Ct. at 464.  Consequently, the presumption of correctness also applies to a state court's factual findings on the circumstances concerning a false

police testimony claim.

The Appellate Division determined the following:

> At the *Huntley* hearing, the arresting officer testified that defendant made his statement spontaneously, before being arrested. A fair reading of the record fails to support defendant's assertions that at a prior proceeding the officer admitted that defendant's statement was the product of custodial interrogation, or that the prosecutor conceded this point. Accordingly, we reject defendant's claim that counsel was ineffective for failing to raise these matters at the *Huntley* hearing (*see People v. Hobot*, 84 N.Y.2d 1021, 1024, 622 N.Y.S.2d 675, 646 N.E.2d 1102; *see also Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674), or that the court's ruling denying suppression was obtained by fraud.

> <u>Torres</u>, 2 A.D.3d at 367, 768 N.Y.S.2d at 824.

The Appellate Division's factual findings that: (1) "At the <u>Huntley</u> hearing, the arresting officer testified that defendant made his statement spontaneously, before being arrested;" and (2) "A fair reading of the record fails to support defendant's assertions that at a prior proceeding the officer admitted that defendant's statement was the product of custodial interrogation, or that the prosecutor conceded this point," are presumed to be correct, unless Torres rebuts them by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). Torres argues that the Appellate Division misstated his claim when it stated his "assertions" were that, "at a prior proceeding the officer admitted that defendant's statement was the product of custodial interrogation, or that the prosecutor conceded this point." Torres points to the record, maintaining:

> His claim was not, and is not, that Sergeant Stremel admitted and the prosecutor conceded at the prior trial that the statement resulted from 'custodial interrogation,' but rather that Stremel admitted at the prior trial, and the prosecutor confirmed that the statement resulted from <u>interrogation</u> and that it was at the later <u>Huntley</u> hearing during the second trial that the question of <u>custody</u> was effectively conceded.

The respondent contends the trial court established, at the <u>Huntley</u> hearing, that Torres' statement

was spontaneous and not elicited in response to any question by Stremel. According to the respondent, "[t]he Appellate Division also held that petitioner was not in custody at the time he made the statement, . . ., but that issue is largely irrelevant because, as the state court held, the statement was spontaneous and not the product of custodial interrogation." The respondent does not address Torres' argument that the Appellate Division made its findings based on a mistaken understanding of his assertions before that court.

Torres presents the record to rebut the presumption of correctness of the Appellate Division's factual findings. Thus, the Court must consider that evidence when determining whether the presumption of correctness assigned to the Appellate Division's factual findings is rebutted. The record demonstrates that, at the <u>Huntley</u> hearing, Stremel testified as follows:

> [STREMEL]: . . . At this point I was satisfied there was no weapon and placed [Cazares'] hands on the fence and made a 911 call.
> [THE PROSECUTOR]: At this time did there come a time Mr. Torres made a statement to you?
> [STREMEL]: Yes.
> [THE PROSECUTOR]: What did he say?
> [STREMEL]: As I was on the phone, I called the operator. Shortly thereafter I was waiting for assistance. Mr. Torres stated, the reason he had his hands in Mr. Czeczot's pockets, he said he believed Mr. Czeczot was trying to sell he and Mr. Cazeres drugs and they believe he was an undercover officer and they were searching him to make sure he is not a police officer.
> [THE COURT]: That's his statement?
> [STREMEL]: Yes.
> [THE PROSECUTOR]: I'm sorry when he made that statement to you had you said anything to him to elicit that statement?
> [STREMEL]: I don't believe so other than the fact I may have said to him he was asking me why he was being held. I briefly explained he was being held for possibly larceny or robbery.
> [THE PROSECUTOR]: And did he just come out and make that statement?
> [STREMEL]: Yes, he did.
> [THE PROSECUTOR]: This was before he was handcuffed?
> [STREMEL]: Yes, it was before he was handcuffed.

[THE PROSECUTOR]: I imagine you were waiting for uniformed assistance?
[STREMEL]: Yes.

On cross-examination, Stremel testified:

[MATTHEWS]: But you had them put their hands on the rails?
[STREMEL]: Correct.  I instructed [Torres and Cazares] to place their hands on the fence that was behind them.
. . .
[MATTHEWS]: Mr. Torres was not free to leave at that point?
[STREMEL]: At that point no, he was not free to leave.
[MATTHEWS]: Did he ask why he was being detained?
[STREMEL]: Yes, he was [sic].
[MATTHEWS]: You told him for possible robbery?
[STREMEL]: Yes, robbery.  Either robbery or larceny, I don't remember the exact terminology I used but basically I believed a crime was being committed.
. . .
[MATTHEWS]: And you did not give Mr. Torres his Miranda rights at that point?
[STREMEL]: No I did not.

The Appellate Division's factual finding that, "At the *Huntley* hearing, the arresting officer testified that defendant made his statement spontaneously, before being arrested," is not supported by the record.  Although Stremel testified that Torres made the statement spontaneously and before he was handcuffed, he also testified that, at the time Torres made the statement, Torres was not free to leave, his hands were placed on the fence per Stremel's directive and Stremel placed the 911 telephone call seeking assistance with "[e]ither [a] robbery or larceny."  No evidence in the record indicates that Stremel testified, at the <u>Huntley</u> hearing, about Torres' arrest or the timing of Torres' arrest.  Therefore, the presumption of correctness that attends with respect to this factual finding of the Appellate Division, is rebutted by clear and convincing evidence.

In his brief to the Appellate Division, Torres asserted:

Although Sergeant Stremel claimed at the <u>Huntley</u> hearing that he did not ask Mr. Torres any question to elicit the alleged statement, [] he had admitted at the first trial that the statement was made in direct response to Sergeant Stremel asking Mr. Torres why his hands were in the complainant's pockets. []  Since there was no debate that Mr. Torres was in custody at the time of the alleged statement, and that <u>Miranda</u> warnings had not yet been given, the sole issue at the hearing was whether Mr. Torres' alleged statement was volunteered or instead was elicited by interrogation. . . . Thus, as a result of counsel's lack of preparation, Sergeant Stremel was able to change his story and testify that Mr. Torres' statement had been volunteered, when in fact it had not been, as the People and Sergeant Stremel had admitted to Judge Beeler. [] Had the trial court been pointed to these representations from the first trial, it is inconceivable that the trial court would have found Sergeant Stremel's account 'credible,' [] and it is inconceivable that the trial court could have concluded beyond a reasonable doubt that Mr. Torres' alleged statement was spontaneously volunteered.

The record demonstrates that Torres did not make assertions that "at a prior proceeding the officer admitted that defendant's statement was the product of custodial interrogation, or that the prosecutor conceded that point."  Torres asserted, in his brief to the Appellate Division, that Stremel "admitted at the first trial that the statement was made in direct response to [his] asking Mr. Torres why his hands were in the complainant's pockets."  He also asserted that both the prosecutor and Stremel represented to the judge, at the first trial, that Torres' statement was not volunteered.  Torres' assertions that the prosecutor represented to the court and Stremel admitted, at the first trial, that Torres' statement was given in response to his question, are not the same as assertions that Stremel admitted and the prosecutor conceded that Torres' "statement was the product of custodial interrogation."  The issue of custody was neither discussed nor determined at the first trial.  The issue before the court, at the first trial, was determining when was the first time Stremel disclosed to the prosecution that Torres made a statement to him in response to his question.  Had Torres asserted that the prosecutor conceded, at the first trial, that his "statement was the product of custodial interrogation," that assertion would not have been supported by the

record because, when the prosecutor brought the issue of Torres' statement to the court's attention, he stated it was "debatable" whether Torres was in custody. However, Torres did not make such an assertion. The presumption of correctness that attaches to the Appellate Division's factual findings that, "A fair reading of the record fails to support defendant's assertions that at a prior proceeding the officer admitted that defendant's statement was the product of custodial interrogation, or that the prosecutor conceded this point," is rebutted by clear and convincing evidence in the record.

*Ineffective Assistance of Counsel Claim*

The Sixth Amendment guarantees a criminal defendant the "right to effective assistance of counsel." Strickland v. Washington, 466 U.S. at 686, 104 S. Ct. at 2063 . To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient; and (2) the deficiency prejudiced his defense. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Counsel's performance is deficient when it falls "below an objective standard of reasonableness," measured according to "prevailing professional norms." Id. at 687-88, 104 S. Ct. at 2064-65. In determining whether counsel's acts or omissions fall "outside of the wide range of professionally competent assistance," a district court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id. at 690, 104 S. Ct. at 2066. Considerable deference is accorded counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. "If certain omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight,

carelessness, ineptitude or laziness," a district court could find "the quality of representation sufficiently deficient to grant the writ." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

Prejudice is rarely presumed, and the defendant generally must prove that "there is a reasonable probability that but for counsel's [error], the result of the proceeding would have been different." Strickland, 466 U.S. at 690, 104 S. Ct. 2066. A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." See id., 466 U.S. at 694, 104 S. Ct. at 2068. "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001). However, a court assessing prejudice must keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696, 104 S. Ct. at 2069. In determining prejudice, a court "must consider the totality of the evidence before the judge or the jury." Id. at 695, 104 S. Ct. at 2069.

Torres contends his trial counsel's failure to impeach Stremel was deficient performance and that deficiency was prejudicial to his defense because the prosecution made credibility a key issue at the trial, and admission of Torres' statement was devastating to his credibility. Torres argues this failure resulted because counsel was not prepared for the Huntley hearing, as he admitted to the court. According to Torres, the Appellate Division's conclusion, that Torres was not denied effective assistance of counsel, for failure to impeach Stremel at the Huntley hearing, was predicated on its legal conclusion that no custodial interrogation occurred, which was an unreasonable application of Miranda. Moreover, Torres contends, the Appellate Division's "decision contains no hint as to whether its conclusion of no 'custodial interrogation' is based on

a legal determination that Mr. Torres was not in custody, or instead [] an unexpressed factual determination that he was not interrogated. Either way, the court erred." Furthermore, Torres maintains, if the Appellate Division rejected his ineffective assistance claim based on its legal conclusion that he was not "in custody" when he made the statement, that conclusion represents an unreasonable application of Miranda because: (a) Stremel's testimony, at the Huntley hearing, established that Torres "was being forcibly held, he was not free to leave, [] heard Stremel call for backup, [], and had been informed that he was suspected of committing robbery" when he made the statement; and (b) the prosecution "never contested the issue of custody at the Huntley hearing and the trial court specifically limited the hearing to the question of whether the statement was spontaneous or elicited by questioning." Torres argues that, if the Appellate Division rejected his ineffective assistance claim based on its legal conclusion that no interrogation occurred, that conclusion has no support in the record, because "two contradictory versions of how the statement resulted" exist in the record.

The respondent contends the prosecutor "established at the hearing that [Torres'] statement was spontaneous and not the product of custodial interrogation." The respondent maintains, "Stremel did not ask [Torres] any questions other than the initial: 'How are you doing, fellows' and 'what's going on here,' and [Torres] simply offered the statement to Stremel." According to the respondent:

> [T]he fact that this occurred on the street, in front of the victim and [Torres'] accomplice demonstrate that Stremel did not intend to interrogate [Torres]. Surely an experienced police sergeant like Stremel would have interrogated [Torres], if he wished to do so, under a much more conducive atmosphere than an alley in the middle of the night. And certainly Stremel would not interrogate [Torres] in front of his accomplice and victim, and fail to provide [Torres] with Miranda warnings.

*Unreasonable Application of <u>Miranda</u>*

> To protect the Fifth Amendment right against self-incrimination, the Supreme Court in *Miranda v. Arizona* ruled that police may not interrogate a suspect who has been taken into custody without first warning the person 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' . . . If a suspect is not so warned, the prosecution is barred from using statements obtained during the interrogation to establish its case in chief.

> United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004) (quoting <u>Miranda v. Arizona</u>, 384 U.S. 436, 479, 86 S. Ct. 1602, 1630 [1966]).

Constitutional safeguards articulated in <u>Miranda</u> apply when "a person in custody is subjected to either express questioning or its functional equivalent." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689 (1980). Thus, <u>Miranda</u> warnings do not need to be given unless a person is both "in-custody" and subject to "interrogation." <u>See</u> <u>Miranda</u>, 384 U.S. at 478, 107 S. Ct. at 1630. "Volunteered statements of any kind are not barred by the Fifth Amendment." <u>Id.</u>, at 478, 86 S. Ct. at 1630. "Interrogation," for the purposes of <u>Miranda</u> warnings, extends to any "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." <u>Innis</u>, 446 U.S. at 301-02, 100 S. Ct. at 1690. The ultimate inquiry in determining whether a defendant was "in custody," for purposes of receiving <u>Miranda</u> warnings, is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." <u>California v. Beheler</u>, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983). In other words, a court asks whether, "in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." <u>Newton</u>, 369 F.3d at 672.

In rejecting Torres' claim of ineffective assistance of counsel because: (a) Stremel testified, at the Huntley hearing, that the statement was made to him spontaneously, before Torres was arrested; and (b) the record failed to support Torres' assertions that Stremel and the prosecutor, at the prior proceeding, conceded custodial interrogation occurred, the Appellate Division was ambiguous about whether it meant that the reading of the record failed to support that Torres was "in custody" or that he was "interrogated." At the second trial, the court stated, when it announced the Huntley hearing would be conducted: "The hearing will be limited solely to the context of the statement to determine whether it was a statement elicited while in custody improperly or whether it was spontaneous." When the hearing commenced, the following colloquy ensued:

> THE COURT: We're having a Huntley hearing to determine the voluntariness because the People's assertion was that the statement made was spontaneous?
> [THE PROSECUTOR]: For investigative purposes, Your Honor.
> THE COURT: For investigative purposes. Go right to the heart of the matter.

At the end of the hearing, the court stated: "The Court finds the sergeant credible and concludes that the statement given to the police officer by Mr. Torres was not the result of custodial interrogation." The record indicates that, at the time the court announced the Huntley hearing would be conducted, it did not consider "in custody" to be a disputed issue. The court narrowed the scope of the hearing to the sole issue of whether the statement was spontaneous, a limitation unopposed by the prosecution. Thus, it would appear that, for the purposes of the Huntley hearing, both Torres and the prosecution conceded, and the trial court accepted, without conducting a specific inquiry, that Torres was "in custody" for the purposes of Miranda warnings. "Interrogation" appears to have been the sole issue at the Huntley hearing. It follows

that the court's determination, at the <u>Huntley</u> hearing, that Torres' statement "was not the result of custodial interrogation," was based on the court's finding that Torres volunteered his statement to Stremel. The court's conclusion that the statement was not the result of custodial interrogation meant that <u>Miranda</u> warnings were not required at that time. It is undisputed that, at the time Torres made his statement, <u>Miranda</u> warnings had not been given to him.

However, the Appellate Division's conclusions that the record: (i) shows that Stremel testified, at the <u>Huntley</u> hearing, Torres' statement was spontaneously made, before Torres was arrested; and (ii) does not show that Stremel admitted and the prosecution conceded, at the prior proceeding, that the statement was the product of custodial interrogation, represent an unreasonable application of clearly established federal law, as determined by the Supreme Court in <u>Miranda</u>. That is so because the record demonstrates that, although Stremel testified, at the <u>Huntley</u> hearing, that Torres made the statement spontaneously, he did not testify about the timing of Torres' arrest. Even if he did so testify, his testimony would not be determinative of the issue of "in custody" for the purposes of a <u>Miranda</u> analysis because the determination of "in custody" is based on an objective standard and not on the subjective views of a police officer. <u>See</u> <u>Newton</u>, 369 F.3d at 671-672; <u>Innis</u>, 446 U.S. at 301, 100 S. Ct. at 1690. Moreover, as neither the issue of "in custody" nor "interrogation" were discussed or determined at the prior proceeding, the Appellate Division applied <u>Miranda</u> unreasonably when, upon review of the record, it made conclusions concerning "custodial interrogation" at the prior proceeding. The record from the first trial contains a representation to the court that Torres' statement was made in response to Stremel's questioning, evidence of which the <u>Huntley</u> hearing court did not appear to be aware. Therefore, any finding with respect to the issue of "custodial interrogation," for the

purposes of <u>Miranda</u> warnings, had to be grounded on a separate analysis of each "in custody" and "interrogation" prong of the <u>Miranda</u> inquiry.  Neither the court at the first trial not the <u>Huntley</u> hearing court appears to have done the "in custody" analysis, required by <u>Miranda,</u> before the ultimate determination on the issue of "custodial interrogation" was made.  Viewed in isolation, and based on Stremel's testimony, which was found to be credible, the <u>Huntley</u> hearing court's determination, that Torres' statement was spontaneous, would have ended the inquiry, for the purposes of applying <u>Miranda</u>'s safeguards.  However, where the record from the first trial demonstrates a representation was made to the court that Torres' statement resulted from Stremel's questioning, and neither the trial court nor the <u>Huntley</u> hearing court conducted a <u>Miranda</u> "in custody" inquiry, as articulated by the Supreme Court in <u>Beheler</u>, the Appellate Division overlooked that evidence erroneously, when it made its pronouncement concerning the issue of "custodial interrogation."  Consequently, the Appellate Division's application of <u>Miranda</u>, in connection with its conclusions concerning "custodial interrogation," which served as the basis for its rejection of Torres' claim of ineffective assistance of counsel, was objectively unreasonable.  The Court finds that, as a result of the Appellate Division's misreading of the record, its application of clearly established federal law governing ineffective assistance of counsel claims, as set forth in <u>Strickland</u>, was objectively unreasonable.

*Failure to Impeach and Lack of Preparation for the Huntley Hearing*

The record demonstrates that, at the first trial, the prosecution represented and Stremel affirmed to the court that Torres' statement was elicited by Stremel's question inquiring why Torres had his hands in Czeczot's pockets.  The record shows that, at the <u>Huntley</u> hearing, Stremel testified Torres made his statement spontaneously, but also that Stremel could not recall

28

whether he asked any questions "when [Torres] said that Mr. Czeczot was trying to sell him drugs." At a Huntley hearing, the prosecution must prove voluntariness of a defendant's statements, beyond reasonable doubt,[7] before the statements can be received in evidence. See Huntley, 15 N.Y.2d at 78, 255 N.Y.S.2d at 843-44. Miranda safeguards are required, after a person has been taken into custody, and before any questioning initiated by a law enforcement officer when the officer knows or should know the questioning is reasonably likely to elicit an incriminating response. See Innis, 446 U.S. at 300-02, 100 S. Ct. at 1689-90. Defense counsel's failure to impeach a key prosecution witness is the type of representation that may fall outside the range of professionally competent assistance contemplated by the Supreme Court. See Strickland, at 690, 104 S. Ct. at 2066; Lindstadt, 239 F.3d at 204; Harris v. Artuz, 288 F. Supp. 2d 247, 259-60 (E.D.N.Y. 2003); Harris v. Senkowski, 298 F. Supp. 2d 320, 337 (E.D.N.Y. 2004); Rodriguez v. Portuondo; No. 01 Civ. 0547, 2006 WL 2168314, at *10 (S.D.N.Y. Aug. 1, 2006). That is so because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested" and a "cross-examiner has traditionally been allowed to impeach, i.e., discredit [a] witness." Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974).

Where the record from the first trial establishes that the prosecutor represented and Stremel affirmed to the court, that Torres' statement was made in response to Stremel's question, and the record, from the Huntley hearing, demonstrates that Stremel testified Torres' statement was spontaneous, a failure to impeach Stremel, with the record from the first trial, constitutes

---

[7] The Court notes that, in federal court, the government has the burden of proving voluntariness by a preponderance of the evidence. See Lego v. Twomey, 404 U.S. 477, 486, 92 S. Ct. 619, 625 (1972).

legal representation that falls outside of the range of professionally competent assistance.

Additionally, Torres' right to effective assistance from counsel was denied when his counsel admitted he was not prepared for the <u>Huntley</u> hearing, but proceeded with it nevertheless, because he failed to impeach the prosecution's key witness.  In the affidavit Torres' counsel submitted in response to the Court's April 8, 2008 order, counsel explained that his "statement about being unprepared for the impromptu <u>Huntley</u> hearing was true, and not an attempt to get the court to reverse its decision about allowing admission of the statement."  Counsel noted, in his affidavit, that, although he was not prepared for the hearing, he proceeded with it "only because the court had made it clear that it would not preclude the statement, and I did not want to abandon my client's cause in the face of the court's erroneous decision about preclusion."  The affidavit explains further that:

> Because of the spur-of-the-moment nature of the hearing, I did not have time to thoroughly review all the paperwork for the specific purpose of a <u>Huntley</u> hearing.  As a result, I did not recall the specific prosecution's representations and Sergeant Stremel['s] statement under oath at the first trial, that Mr. Torres's alleged statement to Stremel resulted from Stremel specifically asking Mr. Torres why his hands were in the complainant's pocket. [] Because my goal at the <u>Huntley</u> hearing was to prevent the statement's admission, had I remembered that both Sergeant Stremel and the prosecution had made statements at the first trial confirming that the [Torres'] statement was made in response to interrogation, I definitely would have used that information to try to impeach Stremel's contradictory testimony at the <u>Huntley</u> hearing that the statement had been spontaneously volunteered.  There was no strategic reason for not attempting to impeach Sgt. Stremel on this matter.

Where a criminal defense attorney knows that an incriminating statement was made by his client and had been admitted into evidence at a prior trial, a reasonable criminal defense attorney would not forgo reviewing thoroughly the transcript from the prior trial, in order to prepare himself for a <u>Huntley</u> hearing, held to determine whether admitting the incriminating statement into evidence,

at a retrial, is appropriate.  See Huntley, 15 N.Y.2d at 78, 255 N.Y.S.2d at 843-44; see also Rompilla v. Beard, 545 U.S. 374, 388-90, 125 S. Ct. 2456, 2467 (2005).  Counsel's failure to "thoroughly review" the transcript from the first trial, especially with respect to Torres' damaging statement, which was admitted into evidence because it was prompted by counsel's inadvertent question to Stremel, is an omission that falls below any objective standard of reasonableness, measured according to prevailing professional norms.  Furthermore, counsel's failure to "thoroughly review" the transcript from the first trial, concerning Torres' incriminating statement, resulted directly in his failure to impeach Stremel with the record evidence demonstrating that the prosecutor represented and Stremel confirmed to the court, at the prior trial, that Torres' statement was made in response to Stremel's question.  As admitted by counsel, through his affidavit, he had "no strategic reason for not attempting to impeach Sgt. Stremel on this matter."  No reasonable justification exists for counsel's failure to impeach the prosecution's key witness' testimony on the voluntariness of Torres' statement with the record evidence demonstrating to the contrary, a task quintessential to counsel's function of making the adversarial testing work in order to safeguard his client's constitutional rights.  The Court finds that counsel's failure to impeach Stremel, at the Huntley hearing, and his failure to prepare for the Huntley hearing constitute ineffective assistance of counsel.

*Prejudice*

Torres contends that, "had defense counsel properly obtained suppression of [his] alleged statement through impeachment of Sergeant Stremel, a damaging and influential piece of evidence would not have been heard by the jury or aggressively used by the prosecution in summation."  According to Torres:

[T]he statement is damaging because its illogical and implausible nature, as well as its purportedly spontaneous offering, is highly suggestive of consciousness of guilt. [He] allegedly blurted out that he was rummaging through the complainant's pockets because the complainant was trying to sell him and Cazares drugs, and they needed to search him because they believed he was an undercover police officer. [He] testified at trial that it was Cazares who was trying to sell drugs and that Cazares was the one who was suspicious of him and Mr. Czeczot and wanted to check identification. [] Consistent with [this] testimony, Mr. Czeczot's wallet was found on Cazares. [] The idea that [] Torres made a contradictory statement at the time of his arrest improbably casting the complainant in the role of drug dealer, as opposed to Cazares, points to the statement's falsity and a consciousness of guilt, which is exactly what the prosecutor argued in summation. The prosecutor labeled the statement a "fabrication" and argued that it resulted as a reaction to [Torres'] being caught "red handed." [] Moreover, the statement was particularly harmful because it was so diametrically opposed to [his] testimony at trial.

Torres alleges that, because his credibility was critical to his defense, and the evidence of guilt was not overwhelming, a reasonable probability exists that, but for his counsel's failure to impeach Stremel and prevent the statement from being admitted into evidence, the jury would have had a reasonable doubt respecting his guilt. The respondent contends "no significant probability" exists "that the second jury would have acquitted petitioner had counsel cross-examined Stremel about any alleged prior inconsistent statement, or had counsel brought to the Huntley court's attention the representations that the prosecutor had made in the first trial."

The existence of a significant probability that but for counsel's error the jury would have acquitted Torres, is not the prejudice standard under Strickland. Rather, the petitioner's burden is to show that a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Court's analysis of prejudice, under the Strickland test, is not circumscribed by the

Appellate Division's conclusion with respect to prejudice, because the Appellate Division did not make a prejudice inquiry.  See Wiggins v. Smith, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542 (2003).

If, as he admitted in his affidavit, Torres' counsel was prepared for the Huntley hearing, he would have remembered that the transcript from the first trial contained impeaching material, and he "would have used that information to try to impeach Stremel's contradictory testimony at the Huntley hearing that the statement had been spontaneously volunteered."  But for counsel's failure to prepare for and use the impeaching material at the Huntley hearing, a reasonable probability exists that the outcome of the hearing would have been different, especially because the burden at the hearing was on the prosecution to establish the voluntariness of the statement, beyond reasonable doubt.  Additionally, Torres' conviction was not supported by overwhelming evidence.  The prosecution presented two witnesses at trial, one of whom testified that he was intoxicated at all relevant times and was unable to recall many details pertaining to the incident.  Thus, Stremel was the prosecution's key witness, and the issue of credibility was a determinative factor based on which the jury rendered its verdict.  Torres' theory of defense was that he was helping Czeczot purchase drugs from Cazares.  Had Torres' statement been suppressed, at the Huntley hearing, the prosecution could not: (a)  use Torres' statement, that Czeczot was selling drugs to them, to damage the credibility of his testimony that Czeczot was purchasing drugs from Cazares; (b) present Stremel's testimony, that Czeczot was searched for drugs and none were found on his person, thus making a fatal blow to Torres' theory of defense; and (c) argue in summation that Torres' trial testimony contradicted directly his statement to Stremel, and, thus, was a fabrication.  Counsel's failure to impeach Stremel damaged, beyond repair, Torres' defense

and foreclosed any possibility that the jury would determine the credibility of Torres' account based solely on his trial testimony, without the benefit of the evidence of his damaging statement to Stremel.

Based on the totality of the circumstances, the Court finds that, but for counsel's failure to prepare and impeach Stremel, at the Huntley hearing, a reasonable probability exists that the outcome of the trial would have been different. The Appellate Division's rejection of Torres' ineffective assistance of counsel claim was based on an objectively unreasonable application of clearly established federal law as determined by the Supreme Court in Miranda. The Court finds further that: (i) trial counsel's performance was constitutionally deficient; and (ii) Torres was prejudiced by counsel's trial errors. Therefore, Torres has met his burden of demonstrating, by a preponderance of the evidence, that he is in custody in violation of his constitutional rights and is entitled to relief on his claim of ineffective assistance of counsel.

*False Police Testimony Claim*

Torres contends the Appellate Division's determination of his claim, that the trial court's denial of his suppression motion was predicated on false police testimony, involved an unreasonable application of Miranda because it was "[p]remised on the same flawed reasoning the court relied upon in rejecting Mr. Torres' ineffective assistance claim." Moreover, according to Torres, the prosecutor's failure to correct Stremel's testimony at the Huntley hearing, violated his constitutional right to due process. The respondent contends Stremel's testimony, at the Huntley hearing, was not false because "no one at the first trial asked Stremel whether [Torres] volunteered the information" or whether Torres "told Stremel that information in response to questioning." Moreover, according to the respondent, the prosecutor's representation to the

court, at the first trial, "is certainly not binding on whether [Torres'] statement was spontaneous or based on questioning," and "the prosecutor may have well been incorrect when he informed the court that the statement was based on Stremel's questioning, or he may have assumed that the statement was based on Stremel's questioning when Stremel never told him that."

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959) (citations omitted). "[E]ven when a prosecutor elicits testimony he or she knows or should know to be false, or allows such testimony to go uncorrected, a showing of prejudice is required" and "the conviction must be set aside unless there is no 'reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Shih Wei Su v. Filion, 335 F.3d 119, 126-27 (2d Cir. 2003) (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 [1976]).

The Appellate Division rejected Torres' claim, that the court's ruling at the Huntley hearing was predicated on false police testimony, based on its findings that the record from the prior proceeding did not indicate Stremel "admitted that defendant's statement was the product of custodial interrogation;" thus Stremel's testimony at the Huntley hearing, that Torres' statement was spontaneous, was not false. The Appellate Division rejected Torres' claim of false police testimony based on an erroneous understanding of Torres' "assertions" and its misreading of the record. While no deference is due to the Appellate Division's factual findings, as explained above, a conclusion by the Court, that the Appellate Division's decision involved an unreasonable application of clearly established federal law governing a false testimony claim, is

not warranted.  The record indicates, as noted above, the prosecutor represented to the court, at the first trial, that Stremel told him Torres' statement was made in response to Stremel's question.  After Torres' counsel opened the door erroneously for the statement to come into evidence, during his re-cross-examination of Stremel, the court conducted a side-bar conference, during which it specifically inquired when it was the officer disclosed to the prosecution, for the first time, that Torres made a statement to him in response to his question.  Although the court did not ask Stremel explicitly whether Torres' statement was made in response to Stremel's question, the court paraphrased the prosecutor's representation: "Something like, according to [the prosecutor] this morning, I think it's something like why he had his hand in the complainant's pocket and the statement was: He was trying to sell us drugs.  I was checking to see if he was an undercover police officer."  Stremel answered: "That's correct," confirming the court's paraphrasing of the prosecutor's representation.  Stremel was not able to recall the first time he disclosed that information to the prosecution.

At the <u>Huntley</u> hearing, Stremel was asked by the prosecutor: "[W]hen [Torres] made that statement to you had you said anything to him to elicit that statement?"  Stremel answered: "I don't believe so other than the fact I may have said to him he was asking me why he was being held.  I briefly explained he was being held for possibly larceny or robbery."  When asked by defense counsel, during cross-examination, at the <u>Huntley</u> hearing, whether he asked Torres "any other questions," in addition to inquiring initially what was going on, Stremel responded: "Not that I can recall.  I may have asked him when he said that Mr. Czeczot was trying to sell him drugs, but honestly I don't recall."

It is manifest, from the responses Stremel provided at the <u>Huntley</u> hearing, that, despite

his affirmative answer to the prosecutor's question, "And did he just come out and make that statement?," Stremel also expressed uncertainty, when he responded to questioning of both the prosecutor and defense counsel, about whether he asked Torres questions that prompted Torres to make the statement. Stremel's statements, "I don't believe so" and "Not that I can recall. I may have asked him . . . but honestly I don't recall," appear to indicate that any discrepancy between Stremel's testimony at the first trial and at the <u>Huntley</u> hearing resulted from his lack of recollection. Where Stremel testified, simultaneously, that he did not believe he asked any question to elicit Torres' statement and also that he could not recall whether he asked any questions, other than the one he asked to establish what was going on, it does not follow that he testified falsely. Therefore, the Court finds that the Appellate Division's application of federal law governing a false testimony claim was not objectively unreasonable, because the record demonstrates Stremel did not provide false testimony. Accordingly, habeas corpus relief is not warranted, based on this claim.

## RECOMMENDATION

For the reasons set forth above, I recommend that Torres' petition for a writ of habeas corpus be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Centre Street, Room 650, New York, New York, 10007, and to the chambers of the

undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an

extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE

OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS

AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985);

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Reynoso,

968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
June 25, 2008

Respectfully submitted,

_Kevin Nathaniel Fox_

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Eunice C. Lee, Esq.
Alyson J. Gill, Esq.

38