

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

IVAN TORRES,

               Petitioner,

    - against -

ROBERT ERCOLE, Superintendent Green
Haven Correctional Facility,

               Respondent.
--------------------------------------------------------------X

06 Civ. 674 (RMB) (KNF)

**DECISION & ORDER**

## I.    Introduction

On January 27, 2006, Ivan Torres ("Petitioner" or "Torres") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") against Robert Ercole, Superintendent of the Green Haven Correctional Facility ("Respondent") challenging his July 26, 2001 conviction, following his second jury trial, in New York State Supreme Court, New York County ("State Supreme Court"), of one count of robbery in the second degree in violation of New York Penal Law § 160.10(1) and three counts of grand larceny in the fourth degree in violation of New York Penal Law § 155.30(4).[1] (See Pet. for a Writ of Habeas Corpus by a Person in State Custody, dated Jan. 27, 2006 ("Pet."), ¶ 4.) On December 3, 2001, Petitioner was sentenced, as a persistent violent felony offender, to an indeterminate term of twenty years to life imprisonment on the robbery conviction to run concurrently with three terms of one-and-one-half to three years imprisonment on the grand larceny convictions. (See Pet. ¶¶ 2–3.)

On February 6, 2003, Petitioner, proceeding pro se, filed two motions to set aside the verdict, one pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 ("440.10

---

[1]    Torres's first trial, which began on April 27, 2001, ended in a mistrial after the jury was unable to reach a verdict in the case. (See infra at 8.)

Motion") and the other pursuant to C.P.L. § 330.30 ("330.30 Motion") arguing, among other things, that his trial counsel, Vincent Matthews, Esq. ("Matthews"), had been ineffective because he was unprepared for a <u>Huntley</u> hearing held July 25, 2001, during Petitioner's retrial.[2] (See Decl. of Alyson Gill, dated June 1, 2007 ("Gill Decl."), Ex. A (Aff. of Ivan Torres, dated Feb. 6, 2003 ("Torres Aff.")), ¶ 8.) On March 28, 2003, the State Supreme Court denied Petitioner's 440.10 and 330.30 Motions finding, among other things, that Torres "received effective representation of counsel." (Gill Decl. Ex. B (Decision & Order, dated Mar. 28, 2003 ("March 2003 Order")), at 6 (Wetzel, J.); <u>see also</u> March 2003 Order at 5 ("This Court, having presided over the retrial and reviewed the Court file, finds no fault with the quality of Mr. Matthews' representation. His pretrial motions were thorough and well-prepared. . . . At the retrial, Mr. Matthews had Jennifer Tsai, a colleague, assist him as co-counsel. They vigorously represented [Torres]. Mr. Matthews made appropriate objections and zealously cross-examined the People's witnesses. Even his zealous representation, however, could not overcome the strength of the evidence.").)

Petitioner appealed the denial of his 440.10 Motion to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"), which consolidated that appeal with Petitioner's direct appeal of his conviction. (See Gill Decl. Exs. C (Notice of Mot. for Leave to Appeal) & D (Certificate Granting Leave).) On appeal, Petitioner alleged, among other things, that: (i) he "received ineffective assistance of counsel at [his] <u>Huntley</u> hearing due to [Matthews'] failure to impeach" New York City Police Sergeant Joseph Stremel ("Stremel"); and (ii) the "ruling at the <u>Huntley</u> hearing was predicated on [Stremel's] false police

---

[2]     A pretrial hearing pursuant to <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965), is held to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers. <u>See</u> <u>Huntley</u>, 15 N.Y.2d at 77–78.

testimony[.]" (Gill Decl. Ex. F (Appellant's Br. on Direct Appeal, dated Mar. 24, 2003), at 18, 22.)

On December 30, 2003, the Appellate Division determined that the 440.10 Motion was "properly denied" and affirmed Petitioner's conviction, finding, among other things, that:  (i)  "a fair reading of the record fails to support [Petitioner's] assertions that at a prior proceeding [Stremel] admitted that [Petitioner's] statement was the product of custodial interrogation, or that the prosecutor conceded this point" and, accordingly, counsel was not "ineffective for failing to raise these matters at the Huntley hearing"; and (ii) Petitioner's "false testimony" claim failed as there was "no basis for disturbing the jury's determinations concerning [Stremel's] credibility." People v. Torres, 2 A.D.3d 367, 367 (1st Dep't 2003).  On April 1, 2004, the New York Court of Appeals denied leave to appeal.  See People v. Torres, 2 N.Y.3d 765 (2004).

On May 26, 2004, Petitioner, proceeding pro se, filed a second 440.10 Motion (again) claiming that his trial counsel had been ineffective at the Huntley hearing.  (See Gill Decl. Ex. L (Notice of Mot. for Leave to Appeal, dated May 26, 2004 ("Pet. 440 Motion")).)  On January 28, 2005, the State Supreme Court denied Petitioner's motion.  (See Gill Decl. Ex. N (Decision & Order, dated Jan. 28, 2005 ("Jan. 2005 Order"), at 2, 3 ("[Torres] now files another C.P.L. § 440.10 motion, which simply repeats the second claim submitted in his appellate brief, that trial counsel was ineffective at the Huntley hearing. . . . Clearly, the issue raised in the instant motion was fully briefed on appeal, examined, and decided by the Appellate Division. Accordingly, this court must deny the defendant's motion.  Although the procedural bar precludes defendant's claim, were this court to review defendant's allegations on the merits, it would reject them as meritless.") (emphasis omitted).)

In his Petition to this Court, Petitioner alleges again that: (1) he was denied effective assistance of counsel in violation of the Sixth Amendment because trial counsel "failed to impeach [Stremel] with the prosecutor's prior representations and [Stremel's] own prior testimony from the first trial" and, had counsel impeached Stremel, "it would have resulted in the suppression of a highly prejudicial statement"; and (2) the admission of Stremel's statement "was predicated on [Stremel's] false testimony." (Pet. ¶¶ 11, 41.)

On June 25, 2008, United States Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation ("Report") recommending that this Court grant the Petition on the basis of Petitioner's ineffective assistance of counsel claim and deny the Petition on the basis of Petitioner's false testimony claim. (See Report at 37.) Judge Fox found, among other things, that: (1) "counsel's failure to impeach Stremel at the Huntley hearing" and "failure to prepare for the Huntley hearing constitute ineffective assistance of counsel" and "[b]ut for counsel's failure to prepare for and use the impeaching material at the Huntley hearing, a reasonable probability exists that the outcome of the hearing would have been different"; and (2) Petitioner was not denied due process because "the record demonstrates [that] Stremel did not provide false testimony." (Report at 31, 33, 37.)

On July 21, 2008, Respondent submitted objections to the Report ("Objections") arguing, among other things, that "defense counsel was not ineffective" because "there [were] no prior inconsistent statement[s] for which defense counsel needed to cross-examine Stremel" and "the record demonstrates that [counsel] was fully prepared for the [Huntley] hearing." (Objections at 5–6.)

On August 20, 2008, Petitioner submitted a response to the Objections ("Response") arguing, among other things, that "counsel's decision to proceed with the Huntley hearing,

4

despite his lack of preparedness, as well as his failure to thoroughly review the transcript from

the prior trial, which directly resulted in [counsel's] failure to impeach Stremel, constituted

ineffective assistance." (Pet'r's Resp. to Objections, dated Aug. 20, 2008 ("Resp."), at 3.)

On October 2, 2008, this Court held a hearing pursuant to <u>Sparman v. Edwards</u>, 154 F.3d

51 (2d Cir. 1998) ("<u>Sparman</u> Hearing") at which Petitioner's former trial counsel, Vincent

Matthews, testified on cross-examination and redirect examination.[3] (<u>See</u> Tr. of Proceedings,

dated Oct. 2, 2008 ("Hr'g Tr.")); <u>see also</u> <u>Sparman</u>, 154 F.3d at 52 ("[A] district court facing the

question of constitutional ineffectiveness of counsel should, except in highly unusual

circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present

evidence, in the form of live testimony, affidavits, or briefs[.]").

The <u>Sparman</u> Hearing elicited the following information, among other things:

> [RESPONDENT]:  Okay, from 1993 until 1999, did you work for the Defender
> Association in Seattle?
> [MATTHEWS]: Yes.
> [RESPONDENT]:  And was that – were you a criminal defense attorney there?
> [MATTHEWS]: Yes, I was.
> [RESPONDENT]: And did you try jury cases?
> [MATTHEWS]: Yes. . . .
> [RESPONDENT]:  So total, do you know how many jury trials you have done?
> THE COURT:  Over 50, anyway, right?
> [MATTHEWS]: Yes.
> THE COURT:  [D]id you ever do, in Seattle, [a] <u>Huntley</u> hearing[?]
> [MATTHEWS]:  We didn't call them <u>Huntley</u>, but state 3.5 hearings, motion to
> suppress statements, yes. . . .
> THE COURT:  Approximately how many would you say?
> [MATTHEWS]:  Over 100.
> THE COURT:  And in New York, did you do any apart from the <u>Huntley</u> hearing
> in this case?
> [MATTHEWS]: Yes.
> THE COURT:  Approximately how many, if you can recall[?]
> [MATTHEWS]:  At least 13[.]"

---

[3]    For purposes of the <u>Sparman</u> Hearing, the Court received Matthews's direct testimony in
affidavit form. (<u>See</u> Aff. of Vince Matthews, dated Aug. 30, 2008 ("Matthews Aff."), ¶¶ 1–14.)

(Hr'g Tr. at 6:15–8:6; see also Matthews Aff. ¶ 1 ("I graduated from Pepperdine University Law School in May of 1993.").)

On November 21, 2008, Petitioner and Respondent filed supplemental memoranda of law. (See Pet'r's Post-Hr'g Submission, dated Nov. 21, 2008 ("Pet. Supp. Mem."); Resp't's Supp. Mem. of Law, dated Nov. 21, 2008 ("Resp. Supp. Mem.").) On December 5, 2008, Petitioner filed a reply to Respondent's supplemental submission. (See Pet'r's Reply to Resp. Supp. Mem., dated Dec. 5, 2008 ("Pet. Supp. Reply").)

**For the reasons set forth below, the Report is rejected in part and adopted in part. The Court respectfully rejects the Report insofar as it recommends granting the Petition with respect to Petitioner's ineffective assistance of counsel claim. The Court adopts the Report insofar as it recommends denying the Petition with respect to Petitioner's false testimony claim.**

## II.    Background

The trial record includes the following evidence as the basis for Petitioner's conviction at his second trial:

At about 5:30 a.m. on Thursday, November 30, 2000, Miroslaw Czeczot ("Czeczot") met Petitioner while looking for an after-hours club. (Tr. of Proceedings, dated July 25, 2001 ("T2 7/25/2001"), at 39:4–48:21.)[4] Instead of going to a club, the two men bought beer at a nearby deli and encountered Arnulfo Cazares ("Cazares"), whom Petitioner described as his "best friend." (T2 7/25/2001 at 31:21–33:10.) After drinking in an alley for about 10 minutes, Petitioner and Cazares blocked the exit to the alley and Petitioner told Czeczot that Cazares "had a gun." (T2 7/25/2001 at 34:23–25.) At that point, Petitioner and Cazares "went through

---

[4]    Citations preceded by "T1" and "T2" are to the transcripts of Petitioner's first and second trials, respectively. Citations with a specific date refer to separately paginated minutes.

[Czeczot's] pockets." (T2 7/25/2001 at 35:9–10.) Petitioner told Czeczot, "Just relax and you won't get hurt." (T2 7/25/2001 at 78:10; see also id. at 36:1–4.)

At that time, while walking to work, New York City Police Sergeant Joseph Stremel observed Czeczot with his hands raised over his shoulders and saw Petitioner "going through Mr. Czeczot's pockets." (T2 7/25/2001 at 77:13–23.) Stremel approached the three men, identified himself as a police officer, and made inquiries to determine what was happening. (T2 7/25/2001 at 79:1–80:6.) After Czeczot told Stremel "they have my wallet," (T2 7/25/2001 at 80:24), Stremel told Petitioner and Cazares to place their hands on the fence located behind them. (T2 7/25/2001 at 81:1–3.) Stremel then called 911 and requested backup, stating that he was holding two individuals for a possible robbery. (T2 7/25/2001 at 81:18–20; 88:2–6, 89:5–7.) When backup officers arrived, Stremel searched Petitioner, Cazares, Czeczot, and the alley, and recovered Czeczot's wallet from Cazares' jacket. (T2 7/25/2001 at 89:8–90:25.) Petitioner and Cazares were placed under arrest. (T2 7/25/2001 at 73:18–74:2.)

In April 2001, Petitioner's first jury trial commenced before State Supreme Court Justice Harold Beeler. On April 27, 2001, before the jury entered the courtroom, the prosecutor informed Justice Beeler that, the previous night, Stremel had alerted him to a statement that Torres had made to Stremel at the scene of the arrest. (Tr. of Proceedings, dated Apr. 27, 2001 ("T1 4/27/2001"), at 70:23–72:2.) According to the prosecutor, Stremel informed him that Torres, in response to Stremel's question, "Why did you have your hand in Mr. Czeczot's pocket," had responded, "[Czeczot] was trying to sell us drugs. I was checking to see if he was an undercover cop." (T1 4/27/2001 at 71:23–72:2.) Justice Beeler determined that he would preclude the prosecution from using Torres's statement on its direct case as "a sanction for . . . late disclosure." (T1 4/27/2001 at 73:1–2.)

7

The jury was unable to reach a verdict in the case and the parties consented to a mistrial.

(Tr. of Proceedings, dated May 1, 2001, at 6:1–15.)

On July 24, 2001, Petitioner's retrial commenced before State Supreme Court Justice

William Wetzel.  At the second trial, the parties apprised Justice Wetzel of the prior court's

ruling precluding Torres's statement to Stremel because the prosecutor had been late in

disclosing the statement.  (Tr. of Proceedings, dated July 24, 2001 ("T2 7/24/2001"), at 15:15–

16:5.)  Defense counsel asserted that the ruling should apply to the retrial as "law of the case,"

while the prosecutor argued that timeliness (i.e., the late disclosure) was no longer an issue

because Petitioner "has had notice of it since the [first] trial."  (T2 7/24/2001 at 16:19–20.)

When the prosecutor stated that he intended to use Torres's statement on his direct case, the

following exchange ensued:

> THE COURT:  The question really now would be do we need a <u>Huntley</u> hearing
> on whether [Torres's statement] was spontaneous or not.
> MR. MATTHEWS:  Your Honor, that was one of the issues that we had last time;
> because it was not noticed.
> THE COURT:  I am willing to – you are making an application now to excuse the
> late notice because of the fact that it – that they were notified at the previous trial.
> I'll grant that motion.
> [THE PROSECUTOR]:  Yes, your Honor.
> THE COURT:  Now, do you want a <u>Huntley</u> hearing on it?
> MR. MATTHEWS:  Well, your Honor, to be quite honest, I'm not prepared to go
> through a <u>Huntley</u> hearing on the issue.
> THE COURT:  Then we won't have a <u>Huntley</u> hearing.
> MR. MATTHEWS:  Well, your Honor, if that's the Court's decision, then we
> would have to have a <u>Huntley</u> hearing.
> THE COURT:  Right.  If you want it.
> MR. MATTHEWS:  Then yes.  But, your Honor, I don't understand -- I don't
> believe the People have articulated any legal basis . . . to excuse their late notice
> for turning over the statement. . . .
> THE COURT:  The defense now has had notice for four months of that statement.
> The question is whether I will permit that notice to satisfy the requirement that the
> People – that the defense has notice.  Tell me why I shouldn't.
> MR. MATTHEWS:  Your Honor, because I believe this was the law of the case
> the first time we tried –

THE COURT:  Well, that's wrong.  We are done with that.  Now, what do you want to do?
MR. MATTHEWS:  Then we will have a <u>Huntley</u> hearing, your Honor.[5]

(T2 7/25/2001 at 5:12–7:15.)  During the <u>Huntley</u> hearing, the prosecutor asked Stremel whether

or not he had "said anything" to elicit Torres's statement.  (T2 7/25/2001 at 66:24–25.)  Stremel

replied, "I don't believe so other than the fact that I may have said to him he was asking me why

he was being held.  I briefly explained he was being held for possibly larceny or robbery."  (T2

7/25/2001 at 67:1–3.)  At the conclusion of the <u>Huntley</u> hearing, Justice Wetzel found Stremel's

testimony "credible" and that "the statement given to [Stremel] by Mr. Torres was not the result

of custodial interrogation."  (T2 7/25/2001 at 70:19–22.)

The trial ensued and on July 26, 2001 the jury returned a guilty verdict against Petitioner.

(T2 7/25/2001 at 250:17–251:9.)

On October 2, 2008, at the <u>Sparman</u> hearing before this Court, defense attorney Matthews

testified:

[THE WITNESS]:  My understanding is that [Torres's] statement would not – was going to be precluded. . . .
THE COURT:  And you thought that because why?  Did you think that the ruling in the first trial was what people call law of the case?
[THE WITNESS]:  Yes, I thought it was law of the case. . . .
THE COURT: So you think the second judge was wrong to conclude that he could have a new ruling?
THE WITNESS: Yes.
THE COURT: You think, as a matter of law, he was wrong?
THE WITNESS: Yes, that was my understanding and belief proceeding into the second trial, which I believe is what I had argued.

---

[5]  <u>See also</u> Hr'g Tr. at 12:15-22 ("[THE COURT]:  [I]t is my understanding that in state court, where there are so many cases, it is not all that uncommon for a judge to say: Okay, let's have the hearing and, in fact, even for those hearings to be rather abbreviated. . . . Is that your experience as well in either Washington or New York? [MATTHEWS]: Yes, that has happened.").

(See Hr'g Tr. at 16:15–16, 18:22–24; 19:10–17; see also Aff. of Vince Matthews, dated Sept. 4, 2008 ("Matthews Aff."), ¶ 7 ("When the trial judge suddenly announced during the middle of the second trial that he would not adhere to the prior judge's preclusion ruling, I was surprised and vigorously protested the judge's ruling, arguing both that preclusion was required under the statute and that the prior ruling was the law of the case.").)

## III. Standard of Review

The Court "shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which an objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). The Court may adopt any portions of the Report to which no specific, written objection has been made, provided they are not clearly erroneous. See Fed. R. Civ. P. 72(b); see also Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).

"[A] district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs[.]" Sparman, 154 F.3d at 52; see also Jackson v. Leonardo, 162 F.3d 81, 86 (2d Cir. 1998).

## IV. Analysis

The Court has conducted a de novo review of, among other things, the Petition, the Report, Respondent's Objections, Petitioner's Responses, Respondent's Supplemental Submissions, Petitioner's Supplemental Submissions and Reply, the record, and applicable legal

authorities, and finds that there is a strong basis for departing from one of the Report's two principal conclusions and recommendations.[6]

Preliminarily, the Court respectfully finds that Judge Fox erred in not holding a Sparman hearing before recommending that Petitioner be granted habeas relief on his claim of ineffective assistance of counsel. See Burch v. Millas, No. 03 Civ. 387, 2009 WL 2507406, at *35 (W.D.N.Y. Aug. 14, 2009) ("[B]efore a habeas court issues a writ of habeas on the basis that trial or appellate counsel rendered constitutionally defective performance, the generally preferred course of action is to hold an evidentiary hearing to allow an allegedly ineffective attorney an opportunity to be heard and to present evidence[.]"); see also Eze v. Senkowski, 321 F.3d 110, 136 (2d Cir. 2003) ("Only in the highly unusual case where no plausible explanation for an attorney's actions exists do we grant the writ without an evidentiary hearing[.]") (internal quotation omitted); Giraldi v. Bartlett, 108 F. Supp. 2d 321, 326 n.12 (S.D.N.Y. 2000). Such a hearing would at the very least have afforded Matthews an opportunity to explain further that he vigorously pressed the law of the case argument and his belief that Petitioner's statement would remain precluded. See Eze, 321 F.3d at 136; Pagan v. Keane, 984 F.2d 61, 64 (2d Cir. 1993).

### (1)   Alleged Ineffective Assistance of Counsel

"To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must: [i] show that counsel's performance fell below an 'objective standard of reasonableness' under 'prevailing professional norms,' and [ii] demonstrate that the alleged inefficiency resulted in prejudice." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Strickland v. Washington, 466 U.S. 668, 687–88 (1984)). "The Strickland standard is rigorous, and the great

---

[6]      As to any portion of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. See Pizarro, 776 F. Supp. at 817. Any Objections not specifically addressed in this Order have been considered de novo and rejected.

majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

A habeas petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698–99 (2002); see also 28 U.S.C. § 2254(d); Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) ("For an application to be 'objectively unreasonable,' [s]ome increment of incorrectness beyond error is required[.]" (internal quotations omitted)).

**Performance**

Petitioner argues, among other things, that "counsel's decision to proceed with the Huntley hearing, despite his lack of preparedness, as well as his failure to thoroughly review the transcript from the prior trial, which directly resulted in his failure to impeach Stremel, constituted ineffective assistance." (Pet. Resp. at 3.) Respondent counters, among other things, that Matthews "correctly argued at the retrial that the preclusion ruling was law of the case and [that Justice Wetzel] should not revisit [Justice Beeler's] ruling and hold a Huntley hearing" and that "counsel's overall representation was effective." (Objections at 9; Resp. Mem. at 25.)

Counsel's "performance is to be judged by an objective standard of reasonableness," Berry v. Hulihan, No. 08 Civ. 6557, 2009 WL 233981, at *4 (S.D.N.Y. Jan. 28, 2009) (citing Strickland, 466 U.S. at 688–89), and "from counsel's perspective at the time," Strickland, 466 U.S. at 689. "The court must be 'highly deferential,' must 'consider[] all the circumstances,' must make 'every effort . . . to eliminate the distorting effects of hindsight,' and must operate

12

with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Lindstadt, 239 F.3d at 199 (quoting Strickland, 466 U.S. at 688–89).

The Court respectfully disagrees with Judge Fox's finding that counsel's "failure to impeach Stremel at the Huntley hearing and his failure to prepare for the Huntley hearing constitute[s] ineffective assistance of counsel." (Report at 31.)

First, counsel was not "objectively unreasonable" in assuming, during the course of his preparation for the second trial, that Justice Beeler's ruling precluding the use of Torres's statement in the first trial was "law of the case," (see Hr'g Tr. at 16:15–16; see also Matthews Aff. ¶ 7), because, under New York law, "an order following a suppression motion made pursuant to CPL article 710" will generally be "binding in a subsequent trial." People v. Evans, 94 N.Y.2d 499, 504–05 (2000); see also People v. Barrett, 212 A.D.2d 621, 622 (2d Dep't 1995); People v. Broome, 542 N.Y.S.2d 433, 434 (4th Dep't 1989) ("Judge Burke's determination [pursuant to Section 710.30] that identification testimony could not be used at trial [for lack of timely notice] constituted law of the case and was binding on Judge Bergin.").[7]

Because Petitioner's counsel had a reasonable basis to believe that Torres's statement would be precluded, counsel (not unreasonably) may not have separately "reviewed the paperwork in the context of preparing for a Huntley hearing." (Hr'g Tr. at 14; see also Matthews Aff. ¶ 11.) Counsel's conduct in this regard cannot be deemed "objectively unreasonable," see Cheng Kang Shi v. Connolly, No. 06 Civ. 2093, 2007 WL 4380276, at *20 (E.D.N.Y. Dec. 13, 2007) ("To the extent that counsel determines that additional investigation would be

---

[7]    Indeed, Petitioner acknowledges that counsel "reasonably expected that the use of Mr. Torres's alleged statement would be precluded." (Pet. Supp. Mem. at 7; see also id. at 5 ("Upon retrial, Justice Wetzel was not free to reconsider Justice Beeler's ruling because as defense counsel correctly argued . . . the law of the case doctrine prohibited introduction of the statement.").)

fruitless . . . , counsel's failure to pursue those investigations may not later be challenged as unreasonable." (internal quotations omitted)), and this Court should not "second-guess" this decision merely because counsel was unsuccessful in his vigorous attempt to persuade Justice Wetzel. (See T2 7/25/2001 at 7:9–12); see also Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986) (courts are "reluctan[t] to second-guess matters of trial strategy simply because the chosen strategy was not successful" (internal quotations omitted)); U.S. v. Lloyd, 484 F. Supp. 2d 1232, 1239 n.11 (S.D. Ala. 2007) (counsel had "a reasonable understanding of the law at the time" and "made reasonable arguments . . . in furtherance of that position").

Second, Judge Fox does not appear to have considered counsel's conduct "from counsel's perspective at the time" and "reconstruct[ed] the circumstances of counsel's challenged conduct." Strickland, 466 U.S. at 689.  The Huntley hearing was held without advance notice on the second day of trial after the prosecution made an oral application "to excuse the late notice" of Petitioner's statement because the defense had the statement since "the previous trial."  (T2 7/25/2001 at 4:20–5:11; 5:17–20; see also id at 63:21–70:22.)  Justice Wetzel granted the application and asked counsel, "Now do you want a Huntley hearing on it?"  (T2 7/25/2001 at 5:22–23.)  After failing to persuade Justice Wetzel that Justice Beeler's ruling was "law of the case," Matthews (reasonably) proceeded with the Huntley hearing and sought to suppress Torres's statement.  (T2 7/25/2001 at 5:24–7:15; see also Matthews Aff. ¶ 7; Hr'g Tr. at 13:16–25 ("And since [Justice Wetzel] was going to have the Huntley hearing anyway, I had to go ahead and proceed, because I wanted to keep the statement out, so I had no choice but to go forward.").)[8]

---

[8]     Counsel's alleged failure to review the transcript from the first trial for impeachment material for an unexpected Huntley hearing at the second trial cannot be deemed "objectively unreasonable" under these circumstances, i.e., which include the "benefit" of hindsight.

And, counsel's performance at the <u>Huntley</u> hearing does not appear to have fallen below

an objective standard of reasonableness. <u>See</u> <u>Berry</u>, 2009 WL 233981, at *7 ("A review of trial

counsel's conduct at the [state court] suppression hearing results in the conclusion that counsel's

performance was effective[.]").  At the <u>Huntley</u> hearing, the prosecution called Stremel (its only

witness) and attempted to establish that Petitioner's statement to Stremel was voluntary.  (<u>See</u> T2

7/25/2001 at 63:21–67:18.)  Stremel testified, among other things, that, while he was waiting for

additional assistance at the scene of the crime, Torres made the statement spontaneously.  (<u>See</u>

T2 7/25/2001 at 67:4–5 ("[THE PROSECUTOR]: And did [Torres] just come out and make that

statement? [STREMEL]: Yes, he did.").)  During cross-examination, Matthews challenged

Stremel's account of the events and twice asked Stremel whether he had elicited Petitioner's

statement.  (<u>See</u> T2 7/25/2001 at 69:19–70:4 ("[MATTHEWS]:  You did ask Mr. Torres

questions prior to him giving that statement?  [STREMEL]:  When I approached, I identified

myself as a police officer and I just stated to the group, nobody in particular, 'How are you

doing, fellows?  I'm a police officer.  What's going on here?'  [MATTHEWS]:  Did you ask Mr.

Torres any other questions?  [STREMEL]:  Not that I can recall.  I may have asked [Torres]

when he said that Mr. Czeczot was trying to sell him drugs, but honestly I don't recall."); <u>see</u>

<u>Dunham v. Travis</u>, 313 F.3d 724, 732 (2d Cir. 2002); <u>see also</u> <u>Mendez v. Connolly</u>, No. 05 Civ.

1979, 2006 WL 464045, at *8 (S.D.N.Y. Feb. 23, 2006) ("A decision on what questions to ask

during cross examination is a strategic decision and should be viewed deferentially.").  And,

Matthews appears to have established that Stremel had not read Petitioner his rights pursuant to

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), before instructing Petitioner to place his hands on the

fence.  (<u>See</u> T2 7/25/2001 at 68:13–69:8 ("[MATTHEWS]:  But you had [Torres and Cazares]

put their hands on the rails?  [STREMEL]:  Correct.  I instructed them to place their hands on the

15

fence that was behind them. . . . . [MATTHEWS]: Mr. Torres was not free to leave at that point? [STREMEL]: At that point no, he was not free to leave. . . . [MATTHEWS]: And you did not give Mr. Torres his <u>Miranda</u> rights at that point? [STREMEL]: No, I did not.")); <u>see also</u> <u>Johnson v. Conway</u>, No. 07 Civ. 445, 2008 WL 2405709, at *11 (N.D.N.Y. June 11, 2008) (no deficient performance where, among other things, "[a]t the <u>Huntley</u> hearing, counsel established through cross-examination of Det. Matos that [petitioner] did not place his initials next to the <u>Miranda</u> warnings on the top page of his statement and argued that the statement was not voluntary") (report and recommendation adopted).

Although Matthews appears strenuously to have challenged Stremel at the <u>Huntley</u> hearing, Justice Wetzel found Stremel to be a credible witness and concluded that Petitioner's statement to Stremel was "not the result of custodial interrogation," (T2 7/25/2001 at 70:21–22). <u>See</u> <u>People v. Prochilo</u>, 41 N.Y.2d 759, 761 (1977) ("[M]uch weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses[.]").

In sum, upon reviewing counsel's overall performance at the <u>Huntley</u> hearing, the Court cannot conclude that counsel's performance was deficient or that his alleged failure further to impeach Stremel was "so serious that counsel was not functioning as the 'counsel' guaranteed [to Petitioner] by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687; <u>see</u> <u>Arkin v. Bennett</u>, 282 F. Supp. 2d 24, 35 (S.D.N.Y. 2003); <u>Edmonson v. Artus</u>, No. 04 Civ. 5477, 2006 WL 3486769, at *14 (E.D.N.Y. Nov. 30, 2006) ("The court finds that, although use of this testimony as impeachment material might have been useful, trial counsel's failure to impeach [petitioner] on this basis did not constitute ineffective assistance of counsel."). "Petitioner is not entitled to a perfect defense. He is entitled to reasonably effective assistance, which he received." <u>Byas v.</u>

Keane, No. 97 Civ. 2789, 1999 WL 608787, at *5 (S.D.N.Y. Aug. 12, 1999) (citation omitted);
see also Johnson, 2008 WL 2405709, at *12 ("[Petitioner's] arguments do not convince this
Court that defense counsel's performance at the Huntley hearing was outside the wide range of
reasonable professional assistance[.]" (internal quotations omitted)).

Third, Judge Fox did not assess counsel's overall (very professional) performance during
Petitioner's retrial, which this Court concludes, upon reviewing the trial transcript, did not fall
"below an objective standard of reasonableness." Strickland, 466 U.S. at 688; (see Report at 22–
31.) "Strickland requires a reviewing court to determine whether, in light of all the
circumstances, the identified acts or omissions were outside the wide range of professionally
competent assistance" and "unless consideration is given to counsel's overall performance,
before and at trial, it will be all too easy for a court, examining counsel's defense after it has
proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."
Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (internal citations and quotations omitted);
see Hughes v. Phillips, 457 F. Supp. 2d 343, 371 (S.D.N.Y. 2006) ("It is counsel's overall
performance that controls, as assessed in a highly deferential review without retrospective
criticism." (internal quotations omitted)); Torres v. Costello, No. 97 Civ. 5480, 2001 WL
811924, at *12 (E.D.N.Y. Jun. 1, 2001); see also Cappiello v. Hoke, 698 F. Supp. 1042, 1053
(E.D.N.Y. 1998) (citing Kimmelman, 477 U.S. at 386); Johnson, 2008 WL 2405709, at *9
(analyzing counsel's performance during entire trial where petitioner claimed counsel was
ineffective at Huntley hearing).

Counsel was prepared for trial, a proposition that Petitioner does not appear to contest.
(See Hr'g Tr. at 15:11–12 ("THE COURT: So on that day, you were ready for trial.
[MATTHEWS]: Yes."); see also Hr'g Tr. at 14:8–19 ("[RESPONDENT]: Were you ready to

17

cross-examine the sergeant at trial at that point?  [MATTHEWS]: Yes. . . . [RESPONDENT]:
And you had read through the testimony of his – testimony from the first trial?  [MATTHEWS]:
Yes."), 14:23 ("[MATTHEWS]:  I had reviewed everything in preparation for the trial.")); Byas,
1999 WL 608787, at *4–*5; Farrington v. Senkowski, 19 F. Supp. 2d 176, 178 (S.D.N.Y. 1998)
("[The] fact that counsel is prepared and familiar with the relevant facts and legal principles is
usually sufficient to defeat a claim that trial counsel was ineffective[.]").

 At the pretrial Sandoval hearing, counsel successfully moved to have the prosecution
precluded from introducing any of the facts underlying Petitioner's prior criminal convictions.[9]
(See T2 7/24/2001 at 7:8–11; 9:9–14 ("THE COURT:  And while the underlying facts do go to
[Torres's] credibility, in terms of balancing the value here I'm going to limit the People to the
fact that [Torres] has been convicted of five felon[ies].")); see also Lebron v. Girdich, No. 03
Civ. 2765, 2003 WL 22888809, at *5 (S.D.N.Y. Dec. 3, 2003) ("[Counsel] made a zealous and
particularized case at the Sandoval hearing for excluding prior convictions[.]"); Felder v. Goord,
564 F. Supp. 2d 201, 219 (S.D.N.Y. 2008); Espejo v. Artuz, No. 98 Civ. 7130, 2000 WL
1863488, at *5 (E.D.N.Y. Dec. 18, 2000).

 Counsel effectively cross-examined Czeczot, forcing him to acknowledge that he
consumed large amounts of alcohol on the night of the robbery.  (See T2 7/25/2001 at 43:4–7
("Q:  And you were drinking beer?  A:  Yes.  Q:  You had ten to fifteen beers?  A:  Around.");
53:2–10 ("Q:  And you went to a deli . . . and bought two more beers; is that right?  A:  I'm not
sure if there were two or three.  I think there were two."); see also Dixon v. Conway, 613 F.
Supp. 2d 330, 386 (W.D.N.Y. 2009) ("A review of the trial transcript reveals that trial counsel's

---

[9] Under New York law, "[a] Sandoval hearing is an evidentiary hearing that is held by the
trial court to determine, should the defendant testify, whether a prior conviction may be used to
impeach his credibility."  Ayala v. Ercole, No. 06 Civ. 1747, 2007 WL 1135560, at *1 n.2
(E.D.N.Y. Apr. 17, 2007) (citing People v. Sandoval, 34 N.Y.2d 371, 374–75 (1974)).

cross-examination of [the prosecution's witness] focused on more fruitful areas of

impeachment – namely, [the witness's] consumption of alcohol[.]"); Mathieu v. Giambruno, No.

05 Civ. 8098, 2008 WL 383509, at *18 (S.D.N.Y. Feb. 11, 2008).

At the conclusion of the prosecution's case, counsel prevailed on his motion to dismiss

one of the two counts of robbery in the second degree, by persuading Justice Wetzel that the

prosecution failed to establish the element of "display" required by New York Penal Law

§ 160.10(2)(b).[10]  (See T2 7/25/2001 at 114:22–115:3 ("MR. MATTHEWS:  Simply, your

Honor, I don't believe the facts at this time as they have been presented to the Court make out a

prima facie case to establish robbery second degree. . . .  Specifically, with regard to display of a

weapon, the testimony is somewhat vague to make out a prima facie case."); 116:4–5 ("[THE

COURT:]  I'll dismiss the Rob. 2, display.")); see also Backus v. Nichols, No. 04 Civ. 356, 2008

WL 413295, at *11 (N.D.N.Y. Feb. 13, 2008); Shaut v. Bennet, 289 F. Supp. 2d 354, 372

(W.D.N.Y. 2003) (counsel "provided more than adequate representation at trial" because, among

other reasons, "he successfully moved to dismiss the felony murder and burglary counts of the

indictment after the close of the People's case").

Throughout the trial, counsel interposed both pertinent and successful objections.  (See

T2 7/25/2001 at 33:20–24, 35:21–23, 78:5–6, 89:23–90:9, 92:25, 200:16–17, 202:8, 206:9–12,

207:16–17); see also DeFayette v. Superintendent, No. 05 Civ. 722, 2008 WL 755822, at *16

(N.D.N.Y. Mar. 19, 2008) (counsel's "representation during trial was amply sufficient" because,

among other reasons, counsel "interposed numerous pertinent objections during the trial");

Lebron, 2003 WL 22888809, at *5.

---

[10]     "A person is guilty of robbery in the second degree when he forcibly steals property and
when . . . [i]n the course of the commission of the crime . . . he or another participant in the
crime . . . displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other
firearm."  N.Y. Penal Law § 160.10(2)(b).

To be entitled to habeas relief, Petitioner "must show that the [Appellate Division] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698–99. In this case, because Petitioner cannot demonstrate ineffective assistance under Strickland, it follows that he cannot demonstrate that the Appellate Division's denial of his appeal was an unreasonable application of clearly established federal law. See Hemstreet v. Greiner, 491 F.3d 84, 90 (2d Cir. 2007).

**Prejudice**

Petitioner argues, among other things, that, "[h]ad defense counsel properly obtained suppression of [Petitioner's] alleged statement through impeachment of Sergeant Stremel, a damaging and influential piece of evidence would not have been heard by the jury[.]" (Pet. Mem. at 25.) Respondent counters, among other things, that "[P]etitioner cannot show that he was prejudiced by [counsel's] conduct" because "the mutually corroborating accounts of Czeczot and Stremel provided overwhelming evidence of [P]etitioner's guilt." (Resp. Mem. at 31; Resp. Supp. Mem. at 13.)

A habeas petitioner carries the burden of demonstrating that "there is a 'reasonable probability that, but for counsel's unprofessional errors,'" Dunham, 313 F.3d at 730 (quoting Strickland, 466 U.S. at 694), "the result of the trial would have been different." Black v. Ercole, No. 06 Civ. 4982, 2009 WL 2709384, at *15 (S.D.N.Y. Aug. 27, 2009) (citing Strickland, 466 U.S. at 694). "A reasonable probability is one sufficient to undermine the confidence in the outcome of the trial," Dunham, 313 F.3d at 730, and in making the reasonable probability determination, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Lynn v. Bliden, 443 F.3d 238, 248 (2d Cir. 2006); see also Rodriguez v. Portuondo, No. 01 Civ. 547, 2006 WL 2168314, at *10 (S.D.N.Y. Aug. 1, 2006)

("Whether counsel's failure to impeach violates the Sixth Amendment depends upon the extent to which impeachment evidence would have affected the outcome of the case" but "not every failure to impeach a prosecution witness will support an ineffective assistance claim.").

Petitioner has not demonstrated a reasonable probability that, had his statement to Stremel at the time of his arrest been suppressed following the Huntley hearing, the result of the trial would have been different. See Wise v. Smith, 735 F.2d 735, 739 (2d Cir. 1984) ("no 'reasonable probability' that the outcome of the trial would have been different" where "[t]he state's case was very strong"). As a preliminary matter, the Court's finding that no prejudice exists is supported by Justice Wetzel's finding that, if he had reached the merits of Petitioner's claim of ineffective assistance on Petitioner's second 440.10 Motion, he would have held it to be "meritless." (Jan. 2005 Order at 3–4 (Wetzel, J.) ("Defendant now files another CPL § 440.10 motion [claiming] that trial counsel was ineffective at the Huntley hearing. . . . Although the procedural bar precludes defendant's claim, were this court to review defendant's allegations on the merits, it would reject them as meritless.").) The bases for Petitioner's ineffective assistance of counsel claim before this Court and Petitioner's second 440.10 Motion before Justice Wetzel are substantially similar, (compare Pet. ¶¶ 11–38, with Pet. 440 Mot. ¶¶ 10–12), and the United States Court of Appeals for the Second Circuit has indicated that an observation by a state court judge, such as Justice Wetzel's, may provide support for a finding of no prejudice. See Dunham, 313 F.3d at 732 ("Our belief that [petitioner] suffered no prejudice is further confirmed by the fact that the same state judge who convicted [petitioner] was unmoved by one of the allegedly inconsistent statements when it was raised [by petitioner] in the § 440 motion before him.").

Even if Matthews had prevailed before or during the Huntley hearing, it, would not have impacted the weight of Stremel's remaining testimony, thereby leaving the jury with ample

21

identification testimony upon which to convict Petitioner. Rodriguez, 2006 WL 2168314, at

*12. The evidence adduced at trial against Petitioner was very strong, which Matthews

acknowledged at the Sparman Hearing. (See, e.g., Hr'g Tr. at 9:11–9:14 ("[RESPONDENT]:

[W]ould you characterize this as your client being caught red-handed. [MATTHEWS]: As the

facts were alleged according to the police reports, yes."); March 2003 Order at 6 (Wetzel, J.)

("Even [Matthews's] zealous representation, however, could not overcome the strength of the

evidence.").)

Stremel provided compelling eye-witness testimony against Petitioner. (See T2

7/25/2001 at 71:10–113:25.) He testified that he observed Czeczot seated "with his hands

raised" (T2 7/25/2001 at 92:15–16); saw Torres "immediately in front of him with his hands

going through [Czeczot's] jacket pockets" and Cazares standing "a step or two behind [Torres]

with his right hand in his jacket pocket" (T2 7/25/2001 at 77:25–78:1, 92:17–18); and heard

Torres say to Czeczot "relax and you won't get hurt" and "[d]on't worry you are going to get

your money back" (T2 7/25/2001 at 78:9–10, 13–14). Stremel arrested Torres at the scene of the

robbery. See Arkin, 282 F. Supp. 2d at 35 ("[The arresting officer] testified that he had a clear

view of the robber [and] stated he was certain that [Petitioner] was the robber."); People v.

Johnson, 875 N.Y.S.2d 13, 14 (1st Dep't 2009) ("overwhelming evidence" where, among other

things, "defendant was arrested at the scene of a robbery that had been witnessed by a police

officer").

Stremel unequivocally identified Torres at trial. (See T2 7/25/2001 at 74:9–15 ("Q: Do

you see either of these two individuals who you arrested that morning in court today? A: Yes, I

do. Q: Who do you see? A: I see Mr. Ivan Torres.")); see also Collins v. Scully, 755 F.2d 16,

19 (2d Cir. 1985) ("The properly admitted evidence against [petitioner] was very strong,

including the firm, unwavering eyewitness testimony of Mrs. Schwartz, who had had ample

opportunities to observe [petitioner] at close range [and] who identified [petitioner] at trial[.]");

People v. Lambert, 44 A.D.3d 688, 689 (2d Dep't 2007) ("overwhelming evidence" included

"the in-court identification of the defendant by two police officers who saw the defendant with

the complainants, pursued him, and arrested him within moments of the [robbery]").

    Stremel's testimony was corroborated by Czeczot who testified, among other things, that

while in the alley the "skinny guy said that his friend had a gun" and "at that point the bulky guy

put his hands in his pockets" while "they went through [Czeczot's] pockets." (T2 7/25/2001 at

34:23–35:10); see also People v. Pellegrino, 634 N.Y.S.2d 91, 91 (1st Dep't 1995); People v.

Ramos, 593 N.Y.S.2d 210, 210 (1st Dep't 1993) ("overwhelming evidence" where, among other

things, "the testimony of the robbery victim [was] corroborated by several police officers").

Czeczot also testified that Torres was a "total stranger," (T2 at 7/25/2001 at 33:20–33:23), and

that he was not looking to purchase drugs the night he met Petitioner. (See T2 at 7/25/2001 at

54:22–55:4 ("[MATTHEWS]: You asked the skinny guy [i.e., Petitioner] if he could purchase

cocaine for you? [CZECZOT]: I didn't. . . . [MATTHEWS]: You had asked the skinny guy if

he could purchase cocaine for you? [CZECZOT]: No.").)

    Czeczot's wallet was recovered from Petitioner's accomplice, providing further evidence

of Petitioner's guilt. (See T2 7/25/2001 at 89:8–10 ("I recovered Mr. Czeczot's wallet in the

right-hand jacket pocket of Mr. Cazares'[s] jacket.")); see People v. Smith, 697 N.Y.S.2d 5, 5

(1st Dep't 1999) ("currency recovered from defendant's companion" provided "strong

circumstantial evidence of [defendant's] guilt"); People v. Lozada, 580 N.Y.S.2d 754, 755 (1st

Dep't 1992); see also Boytion v. Phillips, No. 03 Civ. 1466, 2006 WL 941793, at *8 (E.D.N.Y.

Apr. 12, 2006).

Although Petitioner testified at trial that the incident was not a robbery but a drug deal "gone bad," (see T2 7/25/2001 at 129:2–139:7), Petitioner also confirmed that he did not know Czeczot, (see T2 at 7/25/2001 at 125:4–7 ("[MATTHEWS]:  Had you ever seen Mr. Czeczot before?  [TORRES]:  No, sir.  [MATTHEWS]:  Did you know him by name?  [TORRES]:  No, I did not.")), and Stremel testified that no drugs were recovered from the crime scene.  (See T2 7/25/2001 at 90:14–19 ("[THE PROSECUTOR]:  Did you find any drugs on Mr. Czeczot? [STREMEL]:  No, I did not.  [THE PROSECUTOR]:  Did you find any drugs on Mr. Cazares? [STREMEL]:  No, I did not.  [THE PROSECUTOR]:  Did you find any drugs on the defendant, Mr. Torres?  [STREMEL]:  No, no drugs on Mr. Torres either."); see also T2 7/25/2001 at 89:13–14 ("[STREMEL]:  I also searched the area for a weapon and for, you know, any possible drugs and there was nothing.").)

Finally, the prosecution also impeached Petitioner's credibility with Petitioner's five prior felony convictions.  (See T2 7/25/2001 at 199:20–22 ("[THE PROSECUTOR]:  Now, [Torres] has no credibility here.  He is a five-time felony offender, and you could use that in determining his credibility[.]"), 218:18–219:5); see People v. Rupnarain, 749 N.Y.S.2d 887, 888 (2d Dep't 2002) ("[Prior] convictions were relevant to the issues of the defendant's credibility as a witness and his willingness to place his interests above those of society[.]").  Impeachment through the introduction of prior convictions is considered damaging to Petitioner's defense.  See Bussey v. Greiner, No. 02 Civ. 8642, 2007 WL 2589454, at *12 (S.D.N.Y. Aug. 28, 2007) ("If petitioner testified, his criminal history, including two prior convictions for robbery, would have been admitted to impeach his credibility.  Once the jurors heard of petitioner's prior robbery convictions, it is highly unlikely that they would have acquitted petitioner for the exact same offense (robbery), especially in light of the eyewitness testimony offered at trial.").

(2)     **Alleged False Testimony**

Because neither party objected to Judge Fox's recommendations with respect to

Petitioner's false testimony claim, the Court reviews this portion of the Report for clear error,

see Pizarro, 776 F. Supp. at 817, and finds none.  Judge Fox correctly concluded that "the

Appellate Division's application of federal law governing a false testimony claim was not

objectively unreasonable[.]" (Report at 37.)  "[A] conviction obtained by the knowing use of

perjured testimony on the part of the prosecution 'is fundamentally unfair, and must be set aside

if there is any reasonable likelihood that the false testimony could have affected the judgment of

the jury.'" Vanness v. Rock, No. 08 Civ. 361, 2009 WL 1870940, at *9 (N.D.N.Y. June 29,

2009) (quoting United States v. Agurs, 427 U.S. 97, 107 (1976)); see also Drake v. Portuondo,

553 F.3d 230, 241 (2d Cir. 2009).  "[T]o be distinguished from perjury are mere inaccuracies or

inconsistencies in testimony resulting from confusion, mistake, or faulty memory." Dixon v.

Conway, 613 F. Supp. 2d 330, 389 (W.D.N.Y. 2009).

Judge Fox found that "Stremel did not provide false testimony" because, among other

reasons, it appears that "any discrepancy between Stremel's testimony at the first trial and at the

Huntley hearing resulted from his lack of recollection." (Report at 37.)  The Court perceives no

clear error in Judge Fox's conclusion because, among other reasons, inconsistencies in testimony

that result "from confusion, mistake, or faulty memory" have "been consistently held not to

constitute perjury by the Second Circuit and the Supreme Court." Dixon, 613 F. Supp. 2d at 390

(denying habeas relief on false testimony claim because, among other reasons, "the alleged

instances of 'false' testimony amount to no more than inaccuracies or inconsistencies in

testimony"); see also United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) ("Simple

inaccuracies or inconsistencies in testimony do not rise to the level of perjury."); United States v.

Sanchez, 969 F.2d 1409, 1415 (2d Cir. 1992) ("Differences in recollection alone do not add up to perjury.").

## V.    Certificate of Appealability

A certificate of appealability may not be issued unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made such a showing and a certificate of appealability is neither warranted nor appropriate in this case. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). Any appeal from this Order would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

## VI.    Conclusion and Order

For the reasons stated herein, the Report is adopted in part and rejected in part and the Petition [#1] is denied. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
November 20, 2009

RICHARD M. BERMAN, U.S.D.J.